Antwaun CONLEY, Appellant,

v.

UNITED STATES, Appellee.

No. 11–CF–589.

District of Columbia Court of Appeals.

Argued Nov. 20, 2012.

Decided Sept. 26, 2013.

Ian A. Williams, Washington, DC, for appellant.

Patricia A. Heffernan, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Chrisellen Kolb, and Adrienne Dedjinou, Assistant United States Attorneys, were on the brief, for appellee.

Mikel–Meredith Weidman, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, amicus curiae in support of appellant Antwaun Conley.

Before GLICKMAN, THOMPSON, and OBERLY, Associate Judges.

GLICKMAN, Associate Judge:

In 2009, the Council of the District of Columbia enacted a statute, D.C.Code § 22–2511 (2012 Repl.), making it a felony offense for a person to be present in a motor vehicle if the person knows that the vehicle contains a firearm ("PMVCF"), even if the person has no connection to or control over the weapon and is not involved in any wrongdoing whatsoever. This is the first appeal of a PMVCF conviction to come before this court. Appellant Antwaun Conley, joined by the Public Defender Service as *amicus curiae*, contends that the law is unconstitutional and that the trial court plainly erred in allowing the jury to convict him of this crime.

We agree that the PMVCF statute violates due process. We reach that conclusion for two reasons. First, the essence of the offense is the defendant's voluntary presence in a vehicle after he learns that it contains a firearm. Yet instead of requiring the government to prove that the defendant's continued presence was voluntary, § 22–2511 requires the defendant to shoulder the burden of proving, as an affirmative defense, that his presence in the vehicle was involuntary. This shifting of the burden of persuasion with respect to a

critical component of the crime is incompatible with due process.

Were that the only defect in the statute, it would not necessarily be fatal, for we might sever the constitutionally invalid affirmative defense and construe the remainder of § 22–2511 as imposing on the government the burden to prove that the defendant stayed in the vehicle voluntarily after he learned that it contained a firearm. But burden-shifting is not the statute's only constitutional defect; it offends due process in another way. As the Supreme Court explained in *Lambert v. California*,[1] it is incompatible with due process to convict a person of a crime based on the failure to take a legally required action—a crime of omission—if he had no reason to believe he had a legal duty to act, or even that his failure to act was blameworthy. The fundamental constitutional vice of § 22–2511 is that it criminalizes entirely innocent behavior—merely remaining in the vicinity of a firearm in a vehicle, which the average citizen would not suppose to be wrongful (let alone felonious)—without requiring the government to prove that the defendant had notice of any legal duty to behave otherwise. This is a defect that we cannot cure by interpreting the statutory language. Accordingly, we are obliged to hold that § 22–2511 is unconstitutional on its face and that appellant's conviction for violating that statute must be reversed.[2]

## I. Factual Background

This case began on July 24, 2010, with an early-morning traffic stop by officers of the Metropolitan Police Department of a Honda Accord on Stanton Road in Southeast, Washington, D.C. Appellant was in the driver's seat and a second man, Kendra Allen, was in the front passenger seat. The police took the two occupants to the rear of the vehicle and held them there while officers shone their flashlights into the passenger compartment. When they did so, they observed a handgun in plain view in the center console between the two front seats. The weapon was loaded. A crime scene search officer later dusted the gun and bullets for fingerprints, but no prints were recovered.

In due course, appellant was charged by indictment with four possessory offenses— unlawful possession of a firearm,[3] carrying a pistol without a license,[4] possession of an unregistered firearm,[5] and unlawful possession of ammunition[6]—plus the non-possessory offense of PMVCF, in violation of D.C.Code § 22–2511. He pleaded not guilty. At trial, his defense was that he neither possessed the gun nor knew it was in the car, and that the weapon must have been placed in the console after he exited the vehicle by either Mr. Allen or one of the police officers.[7] Appellant did not challenge the constitutionality of his prosecution for PMVCF.

The judge defined PMVCF for the jury as follows:

---

1. 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

2. Our conclusion that § 22–2511 violates due process in the respects described above renders it unnecessary for us to address other constitutional challenges levied against the statute by appellant and amicus-for example, that it infringes on rights secured by the First and Fifth Amendments to receive information, to associate with others, and to travel freely.

3. *See* D.C.Code § 22–4503(a)(1) (2012 Repl.).

4. *See* D.C.Code § 22–4504(a) (2012 Repl.).

5. *See* D.C.Code § 7–2502.01 (2012 Repl.).

6. *See* D.C.Code § 7–2506.01(3) (2012 Repl.).

7. Mr. Allen did not stand trial as a co-defendant with appellant.

The elements of unlawful presence in a motor vehicle containing a firearm, each of which the Government must prove beyond a reasonable doubt, are that one, Mr. Conley was voluntarily in a motor vehicle; two, a firearm was in the motor vehicle; three, Mr. Conley knew the firearm was in [the] motor vehicle; and four, the firearm was not lawfully carried or lawfully transported.[8]

The jury acquitted appellant of all the possessory offenses. It found him guilty only of PMVCF. For that offense, the judge sentenced appellant to thirty-four months in prison.

## II. The Statutory Offense

D.C.Code § 22–2511, the PMVCF statute, reads in pertinent part as follows:

(a) It is unlawful for a person to be voluntarily in a motor vehicle if that person knows that a firearm is in the vehicle, unless the firearm is being lawfully carried or lawfully transported.

(b) It shall be an affirmative defense to this offense, which the defendant must prove by a preponderance of the evidence, that the defendant, upon learning that a firearm was in the vehicle, had the specific intent to immediately leave the vehicle, but did not have a reasonable opportunity under the circumstances to do so.

The offense is a felony, punishable by up to five years in prison.[9]

The statute was enacted as part of the Omnibus Public Safety and Justice Amendment Act of 2009.[10] As the Council's Committee on Public Safety and the Judiciary explained in its report on the legislation, the new offense of PMVCF was created in order to allow convictions to be obtained when a firearm is found in a car with more than one occupant and the government cannot prove who possessed it:

The issue that this provision seeks to address is when a car is stopped with multiple occupants and a firearm is present in the vehicle—the police are unable to prove who was in possession of the firearm. Even if the police believe they know who possessed the firearm—constructive possession with multiple occupants in the car is very difficult to prove at trial. The proposal therefore seeks to make it illegal for every occupant to be present in the vehicle as opposed to just the occupant that possessed the weapon.[11]

---

8. This instruction mirrors Instruction 6.513 of the Criminal Jury Instructions for the District of Columbia (5th ed. Rev. 2010). In accordance with that model instruction, the judge further instructed the jury that:

A firearm may be lawfully carried outside the home only if a person [(a)] has a license to carry a pistol or is lawfully transporting a rifle or shotgun or ... [(b)] is a Government official authorized to carry a firearm.
A firearm may be lawfully transported only if it's unloaded and either [(a)], [neither] the firearm nor ... the ammunition are readily or directly accessible from the passenger compartment of the transporting vehicle or [(b)], if the transporting vehicle does not have a compartment separate from the passenger's compartment the firearm is

in a locked container other than a glove compartment or console.

9. D.C.Code § 22–2511(c)(1). Subsection (c)(2) increases the maximum penalty to ten years in prison if the violator previously had been convicted of a felony of any kind, or even a misdemeanor violation of D.C.Code § 22–4504(a) (carrying a pistol without a license or any dangerous weapon capable of being concealed on or about the person).

10. D.C. Law 18–88, Act 18–189.

11. D.C. Council, Comm. on Pub. Safety & Judiciary, Report on Bill 18–151, at 3 (June 26, 2009) [hereinafter Committee Report]. This rationale echoed that offered by the proponents of the new law. *See* Committee Re-

As originally proposed, subsection (a) of the PMVCF statute would have made it "unlawful for a person to be in a motor vehicle if that person knows that a firearm is in the vehicle"[12] without regard to whether the person is in the vehicle voluntarily, and the statute did not include an affirmative defense of involuntariness such as that which now appears in subsection (b). The Public Defender Service for the District of Columbia and the D.C. Association of Criminal Defense Lawyers opposed the legislation, among other reasons because it would make felons of citizens who wanted nothing to do with the firearm and were innocent of any wrongdoing.[13] In response to the criticisms, the Committee on Public Safety and the Judiciary revised the statute to its current form. The alterations, which included adding the word "voluntarily" to subsection (a) and creating the affirmative defense now set forth in subsection (b), were intended "to ensure," *inter alia*, that the PMVCF statute would

"not be used against those who ... had no ability to safely distance themselves from the firearm."[14] "In addition," the Committee stated, its "recommended language makes it clear that there must be some deliberate decision on the part of the accused to be in a vehicle with an illegal firearm present."[15]

## III. The Availability and Scope of Review

■ In the trial court, appellant did not raise a constitutional challenge to his prosecution for PMVCF. As a threshold matter, therefore, we must consider whether his attack on the constitutionality of D.C.Code § 22–2511 is properly before us and the scope of our review if it is. The government argues that appellant waived his claim of unconstitutionality by failing to raise it as a defect in the indictment prior to trial pursuant to Criminal Rule 12(b)(2).[16] However, we do not believe that provision is triggered here.[17]

port, Attachment, Joint Testimony of Peter J. Nickles, Att'y Gen. for D.C. & Cathy L. Lanier, Chief of Police, March 18, 2009, at 5 ("[C]riminals will no longer be able to *knowingly* ride around with a gun in clear sight in a car and then claim that it was not in their possession or under their control as a defense."); Committee Report, Attachment, Statement of Patricia Riley, Spec. Counsel to U.S. Att'y for D.C., at 18 ("Unfortunately, where there are multiple occupants in a vehicle, it is extraordinarily difficult to establish who intended to exercise dominion and control over a pistol, even when it is in plain view.... [T]his section may provide some assistance in holding accountable groups of people who ride around in cars with a gun looking for trouble, or looking for victims, or just looking.").

12. D.C. Bill No. 18–138, sec. 220(a) (as introduced Feb. 6, 2009).

13. *See* Committee Report, at 3–4; Committee Report, Attachment, Comments of Public Defender Service, June 2, 2009, at 37 ("This offense would make it a crime to be a bystander."); Committee Report, Attachment,

Final Statement of the D.C. Association of Criminal Defense Lawyers, at 8 (charging that the proposed PMVCF statute "would saddle persons who have *done* nothing wrong with a potentially life altering felony conviction"). The commenters also pointed out other obvious deficiencies, such as that the proposed statute would make it unlawful to be in a vehicle containing a firearm even if the firearm were being transported lawfully.

14. Committee Report, at 4.

15. *Id.*

16. Super. Ct.Crim. R. 12(b)(2).

17. Our prior cases have not settled the question whether a constitutional challenge to the statute creating the charged offense is waived by failing to raise it by motion prior to trial. *Cf. Shepherd v. United States*, 905 A.2d 260, 263 n. 2 (D.C.2006) (finding it unnecessary to decide whether the appellant waived his constitutional challenge to the Bias–Related Crimes Statute by failing to present it pretrial, because appellant could not show plain

■ Although Rule 12(b)(2) provides generally that objections based on defects in the indictment are waived unless raised prior to trial, it makes an exception for objections that the indictment "fails to show jurisdiction in the Court *or to charge an offense.*"[18] Those objections, the Rule states, "shall be noticed by the Court at any time during the pendency of the proceedings." Federal courts, construing a substantially identical provision in the Federal Rules of Criminal Procedure, have held that "[t]he defense of failure of an indictment to charge an offense includes the claim that the statute apparently creating the offense is unconstitutional" and that such a claim therefore is not waived by failing to raise it before trial.[19] We agree with that conclusion. An indictment clearly fails to charge an offense if the Constitution precludes the prosecution.

■ Accordingly, appellant did not waive his constitutional challenge to the PMVCF statute. His failure to present his claim to the trial court, however, comes at a price—namely, that on appeal his claim "is subject to the rigors of plain error review."[20] This means appellant must do more than simply demonstrate (1) that an error was committed in his trial court proceedings; he also must show (2) that the error is plain under current law and (3) that it affected his substantial rights. We then may exercise our discretion to notice the forfeited error and grant appellant relief, but only if "(4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."[21]

## IV. Legal Discussion

### A. The Constitutionality of § 22–2511

■ The first prong of plain error analysis—whether the trial court erred in allowing appellant to be convicted for PMVCF—requires us to evaluate the merits of appellant's claim that D.C.Code § 22–2511 is violative of due process on its face.[22] A facial challenge imposes a

error). *Williams v. United States*, 237 A.2d 539, 540 (D.C.1968), a case cited by the government, did not involve waiver. Rather, it was an instance of what we would now call review only for plain error, as we "decline[d] to exercise our discretion to consider" an unpreserved Second Amendment challenge to the law against carrying a pistol without a license because the statute was not "so clearly unconstitutional that it should have been ruled upon by the trial court" despite appellant's failure to raise the point.

18. Super. Ct.Crim. R. 12(b)(2) (emphasis added).

19. *United States v. Seuss*, 474 F.2d 385, 387 n. 2 (1st Cir.1973); *see also United States v. Thomas*, 534 F.Supp.2d 912, 915 (N.D.Iowa 2008) (citing cases); 24 Daniel R. Coquillette et al, Moore's Federal Practice § 612.04, at 612–13 (3d ed. 2002) ("The defense of failure to charge an offense may be based on . . . the unconstitutionality of the statute relied upon." (footnote omitted)).

20. *Thomas v. United States*, 914 A.2d 1, 6 (D.C.2006). *See also, e.g., Kinane v. United States*, 12 A.3d 23, 26 (D.C.2011) ("Where, as here, appellants fail to object to the constitutionality of [the statute] during the trial court proceedings, this court reviews appellant's claim for plain error."); *Lowery v. United States*, 3 A.3d 1169, 1172–73 (D.C.2010) (reviewing an unpreserved as-applied challenge to the constitutionality of firearm statutes for plain error); *Sims v. United States*, 963 A.2d 147, 148 (D.C.2008) (reviewing an unpreserved facial challenge to the firearm statutes for plain error).

21. *Thomas*, 914 A.2d at 8 (quoting *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (internal quotation marks omitted)).

22. The government urges us in answering this question to consider only the arguments raised by appellant in his brief, and not the additional arguments made by the amicus, because "an *amicus curiae* must take the case as he finds it, with the issues made by the

"heavy burden" on the claimant to establish that "the law is unconstitutional in all of its applications."[23] We look only to whether the statute properly proscribes criminal conduct; we do not examine whether appellant's conduct could have been criminalized under a hypothetical statute.[24] Thus, in a facial challenge, "the claimed constitutional violation inheres in the terms of the statute, not its application."[25] In deciding whether the challenge is meritorious, appellant's "personal situation becomes irrelevant." It is enough that " '[w]e have only the [statute] itself' and the 'statement of basis and purpose that accompanied its promulgation.' "[26] Appellant must demonstrate that the terms of the statute, "measured against the relevant constitutional doctrine, and independent of the constitutionality of particular applications, contain[ ] a constitutional infirmity that invalidates the statute in its entirety."[27] Accordingly, if § 22–2511 fails to require the government to prove everything the Constitution requires it to prove for a criminal sanction to be imposed, as appellant contends, and if the

legislative design and the limits of the judicial function do not permit us to read the critical missing elements into the statute, then appellant has carried his burden of showing that every application of § 22–2511 is unconstitutional—even if a validly written statute could have reached appellant's particular conduct.

We begin by considering the argument that § 22–2511 unconstitutionally shifts the burden of persuasion to the defense with respect to an essential element of the offense, i.e., the defendant's voluntary presence in the vehicle. Assuming that it is possible to overcome this argument by a suitable construction of the statute, we go on to consider whether § 22–2511 nonetheless fails to pass constitutional muster under the principles explained by the Supreme Court in *Lambert*.[28]

## 1. Shifting the Burden of Persuasion

█ Subsection (a) of § 22–2511 makes it unlawful for a person to "voluntarily be" in a motor vehicle if the person knows there is a firearm in the vehicle, unless the firearm is being carried or transported

principal parties." *Givens v. Goldstein*, 52 A.2d 725, 726 (D.C.1947). However, since appellant has adopted all of the amicus's arguments and the government has had a full and fair opportunity to respond to those arguments and has done so, we consider them to the (limited) extent we deem necessary.

23. *Plummer v. United States*, 983 A.2d 323, 338 (D.C.2009) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (internal quotation marks omitted)). The overbreadth doctrine, an exception to this requirement, may be applicable with respect to appellant's First Amendment and right to travel arguments, *see Plummer*, 983 A.2d at 338–39, but we find it unnecessary to reach those arguments in this appeal.

24. *See Wash. State Grange*, 552 U.S. at 449–50, 128 S.Ct. 1184. Conversely, if the statute fairly can be interpreted to comply with the

Constitution, then we do not "go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Id.* at 450, 128 S.Ct. 1184.

25. *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir.2011); *accord State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex.Crim.App. 2011) ("In a facial challenge to a statute's constitutionality, courts consider the statute only as it is written, rather than how it operates in practice.").

26. *Ezell*, 651 F.3d at 697 (quoting *Reno v. Flores*, 507 U.S. 292, 300–01, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)).

27. Mark E. Isserles, *Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement*, 48 Am. U.L.Rev. 359, 387 (1998).

28. *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

lawfully. In response to appellant's criticism that the offense defined in the statute lacks the essential component of a prohibited *actus reus* (culpable *conduct* of some kind),[29] the government explains that subsection (a) creates a valid *crime of omission*—the essence of which is a failure to perform an act that one has a legal duty to perform under the circumstances.[30] Specifically, the government argues, criminalizing voluntary presence in a car by one who knows it contains a firearm is equivalent to criminalizing the voluntary failure to leave the car when one knows there is a firearm in it. In other words, according to the government, "[t]he statute criminalizes failing to leave a car as soon as reasonably possible once one learns that a firearm is present where the firearm is not being lawfully carried or transported." [31]

But if the offense created in § 22–2511(a) is the voluntary failure to leave a motor vehicle as soon as reasonably possible after learning that it contains a firearm, subsection (b) creates a problem. Subsection (b) requires the defendant to prove by a preponderance of the evidence the affirmative defense that he remained in the vehicle against his will because he had no reasonable opportunity to leave it. This seems to mean that instead of the government having to prove that the defendant remained in the vehicle voluntarily, the defendant has to *disprove* it, i.e., to prove that he remained involuntarily. This apparent shift in the burden of proof with respect to the element of voluntary presence implicates fundamental principles of due process.

 The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." [32] This means it is up to the prosecution "to prove beyond a reasonable doubt all of the elements included in the definition of the offense...." [33] The defendant therefore may not be required to "prove the critical fact in dispute," [34] and "the burden of persuasion may not be shifted to the defendant with respect to a defense that serves only to negate an element of the offense that the government is required to prove." [35] Thus, because voluntary pres-

---

29. "In the criminal law, both a culpable *mens rea* and a criminal *actus reus* are generally required for an offense to occur." *United States v. Apfelbaum*, 445 U.S. 115, 131, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980). *See also Powell v. Texas*, 392 U.S. 514, 533, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968) (plurality opinion) ("[C]riminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing, or perhaps in historical common law terms, has committed some *actus reus*."); *Rose v. United States*, 535 A.2d 849, 852 (D.C.1987) ("It is a fundamental principle of our system of criminal justice that an individual will be punished only for bad conduct, not bad intentions."); *Trice v. United States*, 525 A.2d 176, 187 n. 5 (D.C. 1987) (Mack, J., dissenting) ("An '*actus reus*,' or act, is an essential element of every crime.... [T]he common law crimes are defined in terms of act or omission to act, and statutory crimes are unconstitutional unless

so defined.") (quoting W.R. LaFave & A.W. Scott, Jr., Criminal Law § 25 (1972) (internal quotation marks omitted)).

30. *See* 1 Wayne R. LaFave, Substantive Criminal Law § 6.2, at 435 (2d ed. 2003) [hereinafter LaFave].

31. Brief of Appellee in Response to Brief of Amicus Curiae Public Defender Service at 17.

32. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

33. *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

34. *Mullaney v. Wilbur*, 421 U.S. 684, 701, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

35. *Hatch*, 35 A.3d at 1121 (citing *Patterson*, 432 U.S. at 207, 97 S.Ct. 2319).

ence is an undisputed element of the offense of PMVCF, the Due Process Clause forbids shifting the burden to the defendant to negate that element by proving that his presence was not voluntary.

Before we conclude that § 22–2511 impermissibly shifts the burden of persuasion with respect to the element of voluntary presence, we must consider further whether the respective burdens of persuasion may coexist. This depends on how we construe the government's burden under subsection (a) to prove that the defendant "voluntarily" remained in the vehicle. If there are circumstances in which the government could prove beyond a reasonable doubt that the defendant "voluntarily" remained in the vehicle, yet the defendant could prove by a preponderance of the evidence that he would have left but had no reasonable opportunity to do so, then the respective burdens of persuasion would not be incompatible and there would not be an unconstitutional burden-shifting with respect to the element of voluntariness.

What is meant by the word "voluntarily" in subsection (a)? The word is "susceptible to different meanings," [36] so to answer that question, we must consider the statutory context and the purpose of the statute. As a matter of abstract logic, there is one possible interpretation of "voluntarily" that, if acceptable, would avoid the due process problem. If, to prove voluntariness, all the government needs to show is that it would have been *physically possible* for the defendant to leave the vehicle—regardless of the danger, difficulty, inconvenience, or adverse consequences of doing

so, and however reluctantly the defendant chose not to leave in light of such impediments—then the affirmative defense would not be inconsistent with the government's burden of persuasion. The respective burdens would be compatible because the government would simply have to prove that the defendant had *an opportunity* to leave, while the defense could prove that it was not a *reasonable opportunity* in the circumstances.

A hypothetical raised at oral argument in this case illustrates the distinction. Imagine an elderly defendant who sees a gun in the center console of the vehicle she entered as a passenger but decides to stay in the vehicle until it is closer to a bus stop that is still a mile away because she has a bad knee. On such facts, the government could prove that the defendant "voluntarily" remained in the vehicle in the sense that she had an opportunity to leave it. But the defendant could prove that in light of her bad knee and consequent inability to walk a mile, the opportunity she had to exit the vehicle right away was not a reasonable opportunity.

■ Although this broad construction of the word "voluntarily" would manage to avoid the logical incompatibility of subsections (a) and (b), we are not persuaded that it is a plausible construction. No one, of course, can be held criminally liable "for failing to do an act that he is physically incapable of performing." [37] The word "voluntarily" would be superfluous if it was inserted in subsection (a) merely to make that basic jurisprudential point. The law

**36.** *Brown v. State,* 98 S.W.3d 180, 183 (Tex. Crim.App.2003) (construing statute making it a defense to first-degree kidnapping that the kidnapper "voluntarily" released the victim in a safe place).

**37.** LaFave § 6.2(c), at 445; *see also, e.g.,* Model Penal Code § 2.01(1) ("A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable."); 1 Charles E. Torcia, Wharton's Criminal Law § 25, at 143–44 (15th ed. 1993); Rollin M. Perkins & Ronald N. Boyce, Criminal Law 669 (3d ed. 1982).

was not meant to target innocent persons like the elderly woman with the bad knee in the hypothetical, who remain unwillingly only because they have no reasonable opportunity to leave.[38] Only in the most technical sense would one say of such a person that she "voluntarily" stayed in the car. In common parlance, we think one would say she did not voluntarily remain.

Relatedly, a difficult-to-accept consequence of construing the word "voluntarily" to mean only that the defendant had the physical ability to leave would be to increase the risk of convicting innocent defendants—persons who genuinely wanted to leave a vehicle containing a firearm but who had no reasonable opportunity to do so. That such persons would have the opportunity to avoid being convicted by proving the affirmative defense set forth in subsection (b) of the statute does not eliminate that risk, because shifting the burden of persuasion with respect to an essential element from the government to the defendant makes conviction more likely: There is a material difference between requiring the government to prove the existence of a reasonable opportunity to leave beyond a reasonable doubt in order to obtain a conviction and requiring the defendant to prove the absence of such an opportunity by a preponderance of the evidence in order to secure an acquittal. We do not

lightly attribute to the Council the intent to increase the risk of convicting the innocent.[39]

Thus, we are persuaded that subsection (a) requires the government to prove beyond a reasonable doubt that the defendant forsook a reasonable opportunity to leave the vehicle; yet subsection (b) places the burden on the defendant to prove by a preponderance of the evidence that he had no such opportunity. The inconsistency is stark.[40] We therefore are led to conclude that § 22–2511, read as a whole,[41] unconstitutionally shifts the burden of persuasion from the prosecution to the defense with respect to voluntary presence, an essential element of the offense.

The government's response to this conclusion is that we should sever the unconstitutional subsection (b). The general rule, as set forth in D.C.Code § 45–201(a) (2001), is that "the provisions of each act of the Council of the District of Columbia are deemed severable" unless the act in question expressly states otherwise (which § 22–2511 does not), so that the invalidity of a statutory provision "shall not affect other provisions ... of the act which can be given effect without the invalid provision." [42] This statutory directive would seem to be applicable here: If we excise

**38.** As the Committee on Public Safety and the Judiciary emphasized, the PMVCF statute was not meant to be employed against persons who lacked the "ability *safely* to distance themselves from the firearm." Committee Report, at 4 (emphasis added).

**39.** Cf. *Holloway v. United States*, 951 A.2d 59, 65 (D.C.2008) (ambiguous criminal statutes are construed against the government).

**40.** Cf. *Hatch v. United States*, 35 A.3d 1115, 1122 (D.C.2011) (explaining that an affirmative defense of consent to a prosecution for forcible sexual abuse "makes sense only in the unusual case," because ordinarily "it is

'difficult to conceive [how] the government could establish force beyond a reasonable doubt yet the [defendant] could prove consent by a preponderance of the evidence' ") (quoting *Gaynor v. United States*, 16 A.3d 944, 948 (D.C.2011)).

**41.** See, e.g., *Tippett v. Daly*, 10 A.3d 1123, 1127 (D.C.2010) (en banc).

**42.** See also *Gamble v. United States*, 30 A.3d 161, 167 (D.C.2011) ("[I]nvalid provisions are to be severed unless it is evident that without those provisions, the legislature would not have enacted the remaining provisions.") (internal quotation marks omitted).

the affirmative defense, the remaining provisions of § 22–2511 can be given effect consistently, in our view, with what the Council sought to achieve. And the pull of saving rather than destroying legislation when it is possible to avoid the latter is strong.[43] If burden-shifting were the only constitutional problem with § 22–2511, we would opt to sever subsection (b), construe subsection (a) as indicated above, and save the statute in substantial part.

However, as we discuss next, there is another constitutional problem with § 22–2511 that we cannot cure by severance and interpretation. Even if the statute clearly required the government to prove that the defendant had a reasonable opportunity to leave the motor vehicle after learning that it contained a firearm but chose instead to stay, the statute still would be incompatible with the requirements of due process.

## 2. Criminalizing the Failure to Perform a Highly Unusual and Unforeseeable Duty

Even if § 22–2511 is construed to avoid an unconstitutional shifting of the burden of persuasion, appellant argues that the statute still violates due process because it creates an unusual legal duty previously unknown in the District of Columbia—the duty to leave a motor vehicle if it contains a firearm—without requiring proof that the defendant knew or should have known he had such a duty. As appellant recognizes, such proof ordinarily is not required; "[it] is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally...."[44] In unusual circumstances, however, that maxim conflicts with "one of the bedrock principles of American law": the principle that "[i]t is wrong to convict a person of a crime if he had no reason to believe that the act for which he was convicted *was* a crime, or even that it was wrongful."[45] Under such unusual circumstances, either the maxim or the principle must yield. In *Lambert v. California*,[46] the case on which appellant principally relies, the Supreme Court confronted the question of when a legislature may impose criminal liability for failure to perform an unknown legal duty.

*Lambert,* like the present case, involved a crime of unlawful presence based on an obscure local enactment. A municipal ordinance made it unlawful for convicted felons "to be or remain" in Los Angeles for more than five days without registering with the police. Ms. Lambert, who had resided there for seven years, was found guilty of having violated this ordinance by failing to register following her conviction in Los Angeles of forgery (a felony under California law). The state courts rejected her contention that the ordinance denied her due process of law because it neither required proof that the defendant's failure to register was willful (i.e., that the defendant disregarded a known legal obligation to register) nor recognized ignorance of the registration requirement as a defense.

The Supreme Court reversed Ms. Lambert's conviction. The Court readily ac-

---

43. *See Gay Rights Coal. of Georgetown Univ. Law Ctr. v. Georgetown Univ.*, 536 A.2d 1, 16 (D.C.1987) (en banc) (plurality opinion) (holding that ordinarily a statute "must be construed in a manner which protects its constitutionality.").

44. *Barlow v. United States*, 32 U.S. (7 Pet.) 404, 411, 8 L.Ed. 728 (1833); *see also, e.g., Cheek v. United States*, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system.").

45. *United States v. Wilson*, 159 F.3d 280, 293 (7th Cir.1998) (Posner, J., dissenting).

46. 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

knowledged that legislators have "wide latitude ... to declare an offense and to exclude elements of knowledge and diligence from its definition."[47] So too, the Court agreed, "[t]he rule that 'ignorance of the law will not excuse' is deep in our law, as is the principle that of all the powers of local government, the police power is 'one of the least limitable.'"[48] Nonetheless, the Court reasoned, the requirement of notice embodied in due process "places some limits" on the application of these tenets when a law criminalizes "conduct that is wholly passive ... [and] unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed."[49]

The ordinance in *Lambert* met this description, as it made "mere presence" in the city unlawful in the complete absence of "circumstances which might move one to inquire as to the necessity of registra-

tion...."[50] Moreover, the Court noted, "this appellant on first becoming aware of her duty to register was given no opportunity to comply with the law and avoid its penalty, even though her default was entirely innocent."[51] To convict someone under such an ordinance, the Court held, due process requires the government to prove the defendant's "actual knowledge of the duty to register or ... the probability of such knowledge and subsequent failure to comply...."[52]

As this court has stated, *Lambert* is "a rare instance" in which the Supreme Court has held that knowledge of the law is a constitutionally required prerequisite to criminal liability.[53] While *Lambert* is not limited exclusively to registration statutes, it clearly does not stand for the proposition that ignorance of the law is a defense to every crime of omission, and it suggests "no general requirement that a State take

47. *Id.* at 228, 78 S.Ct. 240.

48. *Id.* (citations omitted).

49. *Id.*

50. *Id.* at 229, 78 S.Ct. 240.

51. *Id.*

52. *Id.; see also id.* at 229–30, 78 S.Ct. 240 ("Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community.").

53. *McNeely v. United States*, 874 A.2d 371, 384 (D.C.2005). In other cases, the Court has avoided due process problems by construing statutes prohibiting "willful" activity to require knowledge of the technical or esoteric legal duty at issue. *See, e.g., Ratzlaf v. United States*, 510 U.S. 135, 149, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (holding that in a prosecution for willfully violating federal law against structuring financial transactions to

evade bank reporting requirements, the government must prove that the defendant acted with knowledge that his conduct was unlawful); *Cheek v. United States*, 498 U.S. 192, 201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) ("Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."). *See also United States v. Moore*, 612 F.3d 698, 703 (D.C.Cir. 2010) (Kavanaugh, J., concurring) (citing cases in which "the Supreme Court has recognized an ignorance-of-law or mistake-of-law defense, or has required affirmative proof of the defendant's knowledge that his or her conduct was unlawful").

In the analogous negligence context, violation of a statute imposing a duty of care is ordinarily proof of violation of the duty of reasonable care. However, where "the statute is somewhat obscure or unknown to the general public," courts have held that defendants cannot be charged with knowledge of (and violation of) the statutory standard. *Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195, 1199 (Wyo.1987); *see also Beck v. State*, 837 P.2d 105, 116 (Alaska 1992).

affirmative steps to inform its citizenry of their obligations under a particular statute before imposing legal sanctions for violation of that statute."[54] Rather, *Lambert* recognizes that "[t]he State's power to impose sanctions on individuals is to be tested in part against the rationality of the proposition that those individuals were or could have been aware of their legal obligations."[55] *Lambert* applies only when an unusual statute is "triggered in circumstances so commonplace, that an average citizen would have no reason to regard the triggering event as calling for a heightened awareness of one's legal obligations."[56] In other words, only legal "duties of a highly unusual and unforeseeable nature" trigger *Lambert*.[57] But when such novel and unanticipated duties are in question, it is no answer to say that the law is on the books, the books are in the public library, and anyone can go read them.[58]

Criminal laws seldom impose unusual and unforeseeable duties on the average person. In most cases in which courts have confronted the issue, they have found it fair to charge people with knowing their legal obligations because the circumstances put them on, at least, inquiry notice. Many of these cases involve "public welfare offenses" created by "statutes that regulate potentially harmful or injurious items" like drugs, highly dangerous weapons like machine guns and grenades, or noxious waste materials.[59] In those cases, the Supreme Court has "reasoned that as long as a defendant knows that he is dealing with a dangerous device of a character that places him 'in responsible relation to a public danger,' he should be alerted to the probability of strict regulation, and [the Court has] assumed that in such cases Congress intended to place the burden on the defendant to 'ascertain at his peril whether [his conduct] comes within the inhibition of the statute.'"[60]

This court has followed that reasoning. In *McNeely*, for instance, we rebuffed a

54. *Texaco, Inc. v. Short*, 454 U.S. 516, 546, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) (Brennan, J., dissenting).

55. *Id.* at 546–47, 102 S.Ct. 781.

56. *Id.* at 547, 102 S.Ct. 781. *Cf. United States v. Freed*, 401 U.S. 601, 608, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) ("Being in Los Angeles is not *per se* blameworthy."); *United States v. Hutzell*, 217 F.3d 966, 968 (8th Cir.2000) ("The *Lambert* principle applies ... only to prohibitions on activities that are not *per se* blameworthy ... [and] if [the defendant's] lack of awareness of the prohibition was [not] objectively unreasonable."); *United States v. Tapia*, 981 F.2d 1194, 1196 (11th Cir.1993) ("Under unusual circumstances such as where the law criminalizes behavior that the average person would not presume to be prohibited, the Constitution's due process requirement may bar imposition of criminal liability on a defendant who was unaware of the law's existence." (citing *Lambert*, 355 U.S. at 229, 78 S.Ct. 240)).

57. LaFave § 6.2(b), at 444–45.

58. As Judge Posner has written,

We want people to familiarize themselves with the laws bearing on their activities. But a reasonable opportunity doesn't mean being able to go to the local law library and read Title 18. It would be preposterous to suppose that [the average individual] is able to take advantage of such an opportunity. *United States v. Wilson*, 159 F.3d 280, 295 (7th Cir.1998) (Posner, J., dissenting).

59. *Staples v. United States*, 511 U.S. 600, 607, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); *see also, e.g., Freed*, 401 U.S. at 609, 91 S.Ct. 1112 (declining to extend *Lambert* to the possession of hand grenades, for "one would hardly be surprised to learn that possession of hand grenades is not an innocent act").

60. *Staples*, 511 U.S. at 607, 114 S.Ct. 1793 (citations omitted) (quoting *United States v. Dotterweich*, 320 U.S. 277, 281, 64 S.Ct. 134, 88 L.Ed. 48 (1943)). We note that the *mens rea* issue in *Staples* was not whether the government had to prove the defendant's knowl-

*Lambert* challenge to a provision of the "Pit Bull Act" making it a crime to own a pit bull that has injured or killed a human being or another domestic animal without provocation. We held that given the well-known dangerous proclivities of the breed, the owner's "knowledge that his dogs were pit bulls should have moved him to inquire into his heightened obligations under the Act." [61] Similarly, in *McIntosh v. Washington*, we rejected a *Lambert* claim that the District's firearms laws denied due process by imposing criminal penalties on those who fail to register their firearms, "regardless of their knowledge of the duty to register." [62] "[W]here dangerous or deleterious devices or products are involved," we explained, "the probability of regulation is so great that anyone who is aware that he is either in possession of or dealing with them must be presumed to be aware of the regulation." [63]

Courts also have rejected *Lambert* challenges to statutes imposing legal obligations on persons with other particular reasons to be on notice of them, as in prosecutions for violating 18 U.S.C. § 922(g)(9) and 18 U.S.C. § 922(g)(8) (statutes that prohibit the possession of firearms by persons who have been convicted of misdemeanor domestic violence offenses or who are subject to a judicial anti-harassment or anti-stalking order) [64] and for failing to register as required by the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a). [65] (Judge Thompson's concurrence cites a provision of the District's old Narcotic Vagrancy statute (repealed in 1981) that, in a somewhat similar vein, made it a crime for "any person who is a narcotic drug user or who has been convicted of a narcotic offense" to be "found in any place ... in which any illicit narcotic drugs are kept, found used or dispensed." [66])

edge of the law, but rather whether it had to prove his knowledge of the critical fact that brought him within the law's application.

**61.** *McNeely*, 874 A.2d at 384.

**62.** 395 A.2d 744, 756 (D.C.1978).

**63.** *Id.*

**64.** *See, e.g., United States v. Barnes*, 295 F.3d 1354, 1368 (D.C.Cir.2002) ("Having been convicted of a violent crime, Barnes had reason to know that the government could regulate his possession of firearms and thus he cannot avail himself of the limited *Lambert* exception."); *United States v. Hutzell*, 217 F.3d 966, 968–69 (8th Cir.2000) ("[A]n individual's domestic violence conviction should itself put that person on notice that subsequent possession of a gun might well be the subject of regulation.... Although an individual's right to bear arms is constitutionally protected, the possession of a gun, especially by anyone who has been convicted of a violent crime, is nevertheless a highly regulated activity, and everyone knows it.") (citation omitted); *United States v. Meade*, 175 F.3d 215, 226 (1st Cir.1999) ("[A] person who is

subject to [an anti-harassment or anti-stalking restraining] order would not be sanguine about the legal consequences of possessing a firearm[.]").

**65.** *See, e.g., United States v. Hester*, 589 F.3d 86, 91–93 (2d Cir.2009) (holding that even though the defendant had not been given actual notice of his registration obligations under SORNA, his prosecution under that statute did not violate his due process rights under *Lambert* where he was on notice that state law required sex offenders to register); *United States v. Gould*, 568 F.3d 459, 468 (4th Cir.2009) ("Unlike an isolated city ordinance that requires all members of the broad class of all felons to register, however, SORNA criminalizes the failure to register of a much more narrowly targeted class of persons in a context where sex-offender registration has been the law for years and Gould knew that.").

**66.** D.C.Code § 33–416a (b)(1)(B) (1967). *See post*, at 291. However, unlike the other statutes cited above, the constitutional challenge to this provision was not made on *Lambert* grounds, but rather on the basis of vagueness.

The statute before us in this case, § 22–2511, is similar to the ordinance in *Lambert*. It criminalizes the "wholly passive" state of "mere presence" in a particular location—a motor vehicle—without requiring proof of "actual knowledge" of a legal duty to absent oneself if the vehicle contains a firearm or "proof of the probability of such knowledge and subsequent failure to comply."[67] Nor does the statute require proof of any conduct beyond mere presence that would traditionally and foreseeably subject a person to criminal sanction, such as handling or concealing the firearm, constructively possessing it, or aiding and abetting someone else's possession or use of it. And it cannot be maintained (nor does the government contend) that penalizing mere presence is permissible because anyone who knowingly enters or stays in a car after learning it contains a gun must be embarked on a criminal venture of some sort. On the contrary, people harboring no evil intent of any kind may find themselves, inadvertently or otherwise, riding with a gun in a car, taxi cab, or truck for any number of innocent reasons—and, in doing so, they reasonably may perceive no necessity (let alone a legal obligation) to interrupt and discontinue their journey abruptly in order to make a premature exit just because there is a gun present. Indeed, given the "long tradition of widespread lawful gun ownership by private individuals in this country,"[68] and the recent definitive recognition of a Second Amendment right to possess guns for self-protection,[69] individuals (especially visitors from other jurisdictions) who do not happen to be well-versed in the intricacies of the District's firearms laws may not see anything wrong in the presence of a gun or realize that the local law may proscribe its possession or transportation.[70]

Moreover, unlike § 22–2511, laws that survive *Lambert* challenges target those who are on inquiry notice of the legal duties imposed on them by the nature of the activities in which they have chosen to engage. It is fair to say that persons who choose to own, possess, transport, or otherwise deal with firearms are or should be aware that their activities are highly regulated by law and that they must be alert to ascertain and comply with their attendant legal obligations. Such persons are on

---

Construing the provision as requiring the government to prove that the defendant knew the drugs were present, this court rejected the vagueness claim. *See United States v. McClough*, 263 A.2d 48, 55 (D.C.1970), *reversed on other grounds, Holly v. United States*, 464 F.2d 796 (D.C.Cir.1972).

67. *Lambert*, 355 U.S. at 228–29, 78 S.Ct. 240.

68. *Staples*, 511 U.S. at 610, 114 S.Ct. 1793.

69. *See McDonald v. City of Chicago*, —— U.S. ——, 130 S.Ct. 3020, 3049, 177 L.Ed.2d 894 (2010); *District of Columbia v. Heller*, 554 U.S. 570, 635, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

70. Although we do not decide the question, we note that § 22–2511 does not appear to require the government to prove knowledge that the firearm was carried or transported unlawfully. On the other hand, the Committee on Public Safety and the Judiciary did state that its revisions to the proposed enactment would "ensure that the charge will not be used against those who ... legitimately believed the possession of the firearm was lawful...." Committee Report, at 4. In any event, even if we were to agree with Judge Thompson's view that § 22–2511 should be construed to require proof that the defendant knew or should have known the firearm was carried or transported unlawfully, *see post*, at 290–91, it would not alter our analysis of the statute's unconstitutionality, as the statute would remain subject to the due process defects we identify. It would still suffer from the shift in the burden of proof with respect to voluntariness. And, more fundamentally, the problem would remain that the PMVCF statute would still criminalize a failure to perform a highly unusual and unknown legal duty.

notice that they may incur criminal penalties if they are not careful. But § 22–2511 requires no proof of firearm ownership, possession, transportation, or dealing by the defendant.[71] The statute targets persons who are not engaged in any of those activities and who therefore have no reason to be familiar with the firearms laws or to investigate whether those laws impose any duties on *them*. And the existence of § 22–2511, or any law regulating simple presence in the vicinity of a firearm, is certainly not common knowledge.

The critical question, then, is whether merely finding oneself riding in a motor vehicle with a gun is in itself a "circumstance[ ] which might move one to inquire as to the [legal] necessity" of exiting the vehicle;[72] or, to put it more finely, whether the average person should know that he may be committing a felony offense merely by remaining in the vehicle, even if the gun belongs to someone else and he has nothing to do with it. We think not. Section 22–2511 is an anomaly, a unique departure from the fundamental and intuitive premise of our legal system that one does nothing wrong and does not become a criminal merely by being a bystander to a crime.[73] It is a legal truism that, absent voluntary participation of some kind in criminal activity, "mere presence" in the vicinity of such activity is normally not culpable and is not subject to a criminal sanction.[74] That proposition, we believe,

---

**71.** We do not agree with the suggestion, *post* at 294, that merely remaining in the presence of a firearm is the equivalent, for *Lambert* purposes, of being "in possession or dealing with" a firearm, as we used those words in *McIntosh v. Washington*, 395 A.2d 744, 756 (D.C.1978).

**72.** *Lambert*, 355 U.S. at 229, 78 S.Ct. 240.

**73.** *Cf.* LaFave § 6.2, at 435 n. 4 (noting that there is generally a "reluctance to enact" statutes imposing a duty to act, since "a governmental demand to perform is significantly more intrusive than a command to refrain from harmful action") (quoting 1 P. Robinson, Criminal Law Defenses § 86(b) (1984)). Indeed, we are hard-pressed to find a comparable statute anywhere in the United States. However, in *State v. Adkins*, 196 Neb. 76, 241 N.W.2d 655 (1976), the Supreme Court of Nebraska did have occasion to consider an analogous law, which made it "unlawful for any person ... to visit or to be in any room, dwelling house, vehicle, or place where any controlled substance is being used contrary to [specified laws] if the person has knowledge that such activity is occurring." *Id.* at 656. The court held the statute unconstitutionally vague and overbroad. *Id.* at 659–60. Courts in a few other jurisdictions have salvaged similar enactments by construing them to require proof of additional elements beyond mere knowing presence at the scene of illegal

activity. *See People v. Cressey*, 2 Cal.3d 836, 87 Cal.Rptr. 699, 471 P.2d 19, 28–29 (1970) (requiring proof that the defendant controlled the premises); *Commonwealth v. Tirella*, 356 Mass. 271, 249 N.E.2d 573, 575–76 (1969) (requiring the state to prove "acquiescent association" and "an absence of prompt and adequate objection" in addition to presence); *Jolley v. City of Jacksonville*, 281 So.2d 901, 903 (Fla.Dist.Ct.App.1973) (requiring the government to prove aiding or abetting in addition to presence).

**74.** *See, e.g., Rivas v. United States*, 783 A.2d 125, 130 (D.C.2001) (en banc) (reversing the conviction of an automobile passenger for constructive possession of narcotics in the vehicle, stating: "There must be something to prove that the individual was not merely an incidental bystander. It may be foolish to stand by when others are acting illegally, or to associate with those who have committed a crime. Such conduct or association, however, *without more*, does not establish the offenses here charged.") (quoting *United States v. Pardo*, 636 F.2d 535, 549 (D.C.Cir.1980)); *Bailey v. United States*, 416 F.2d 1110, 1113–14 (D.C.Cir.1969) (reversing a conviction for robbery, stating: "An inference of criminal participation cannot be drawn merely from presence; a culpable purpose is essential.... [T]he accused's presence is a circumstance from which guilt may be deduced if that presence is meant to assist the commission of the offense or is pursuant to an understanding

expresses a widely held expectation in our society—an expectation reinforced by the understanding that our Constitutional liberties include "the right to remove from one place to another according to one's inclination" [75] and the "individual's decision to remain in a public place of his choice." [76] The freedom to move around as we see fit and be where we want to be with minimal legal constraint is indeed "part of our heritage." [77]

Statutes criminalizing trespass [78] or knowing presence in an illegal establishment [79] can be cited as exceptions to the generalization that "mere presence" is not a sufficient basis for criminal punishment.[80] But the important point, for present purposes, is that those statutes raise no *Lambert* notice issue—the average citizen hardly would be unaware of the wrongfulness of trespassing or patronizing criminal enterprises,[81] or surprised to learn of legal duties to avoid trespassing and frequenting illegal establishments.

The PMVCF statute is in a different category.

Indeed, the anomaly and unforeseeability of § 22-2511 are exacerbated by the peculiarity that it is only a crime to remain in the presence of a firearm when inside a motor vehicle. Nowhere else in the District of Columbia does one incur a legal duty to distance oneself upon learning of the presence of a gun on the premises or within one's immediate proximity. Similarly, one who knows a friend is illegally carrying a firearm on his person may remain in the friend's company all day long, pursuing a wide range of normal activities—for instance, walking on the street, going shopping, eating at a restaurant, seeing a movie, visiting the gym, conducting business, and so forth—without violating the law; yet under § 22-2511, if one takes the equally innocuous additional step of accompanying the friend in a car, truck, or bus, one suddenly and without warning commits a felony. Who, not previously

---

that he is on the scene for that purpose. And ... mere presence would be enough if it is intended to and does aid the primary actors. Presence is thus equated to aiding and abetting when it is shown that it designedly encourages the perpetrator, facilitates the unlawful deed—as when the accused acts as a lookout—or where it stimulates others to render assistance to the criminal act. But presence without these or similar attributes is insufficient to identify the accused as a party to the criminality." (internal quotation marks, citation, and footnotes omitted)).

**75.** *Williams v. Fears*, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186 (1900).

**76.** *City of Chicago v. Morales*, 527 U.S. 41, 54, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (plurality opinion).

**77.** *Kent v. Dulles*, 357 U.S. 116, 126, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958).

**78.** *See* D.C.Code § 22-3302 (2012 Repl.).

**79.** As mentioned in Judge Thompson's concurrence, a former statute in this jurisdiction made it a crime for a person to be "found" in "a gambling establishment or an establishment where intoxicating liquor is sold without a license or any narcotic drug is sold, administered, or dispersed without a license," if the person "knew that it was such an establishment and if he is unable to give a good account of his presence in the establishment." D.C.Code § 22-1515(a) (1967). The United States Court of Appeals for the District of Columbia Circuit held this statute to be unconstitutionally vague in *Holly v. United States*, 464 F.2d 796, 798-99 (D.C.Cir.1972) (*per curiam*), reversing this court's decision holding otherwise in *United States v. McClough*, 263 A.2d 48, 52 (D.C.1970).

**80.** *See post*, at 292 n. 5, 295-96.

**81.** *See McClough*, 263 A.2d at 52 ("[P]resence in an illegal establishment ... is not presumptively innocent behavior."). (It should be noted that no *Lambert* issue was raised in *McClough*.)

informed of it, would anticipate such a volte-face exception?

And to expand on a point made earlier, the duty created by § 22–2511 not to be in any motor vehicle containing a firearm is even more extraordinary and unimaginable because it is so unqualified—the existence of legitimate, innocent reasons for being in the vehicle voluntarily despite knowing that a firearm is present *do not matter*. Illustratively, the doctor who enters the car to minister to a sick or injured occupant, the friend who drives that person to the hospital, the parent who seeks to take a child from the car, the person who desires only to retrieve his personal property from the vehicle—all are subject to § 22–2511; all are felons under the law if they act with knowledge that a firearm is in the vehicle. Again, who not previously informed of this statute would conceive of such a state of affairs?

Although, as Judge Thompson argues, motor vehicles are subject to "pervasive schemes of regulation,"[82] we are aware of no vehicular regulation or regulatory scheme that would alert an innocent person to a legal duty to leave a vehicle if it contains a firearm. To say, for example, that passengers are on notice of regulations clearly connected to the consequences of their riding in a car—for example, regulations requiring them to wear seatbelts for their own protection in the event of an accident—does not imply they are legally responsible for the car's contents (not their own) or put them on notice of a duty to leave a car depending on what objects happen to be in it. Few (if any)

motor vehicle regulations impose duties on passengers based on the actions of other occupants. Similarly, we think it immaterial that (as the concurrence argues) motor vehicle passengers may be detained along with the driver in a traffic stop and, "if contraband is observed anywhere in the vehicle, may have their purses, backpacks, and similar containers searched."[83] That is true enough, but it is beside the point— it does not put innocent passengers on notice of the legal duty created by § 22–2511. The same is true of the self-evident fact, also mentioned in the concurrence, that the presence of a firearm increases the risk of harm if the motor vehicle is used to commit a crime.[84]

The average person surely does know that guns are dangerous and subject to regulation, and that while "guns generally can be owned in perfect innocence,"[85] they also often are possessed illegally and used to commit crimes. In many circumstances, prudent, law-abiding persons naturally may be uncomfortable in the presence of firearms and wish not to be associated with them. Those facts are not enough, however, to put ordinary people on notice that merely being in a motor vehicle containing a gun is subject to the "strict regulation"[86] that § 22–2511 imposes—that the simple sight of a handgun triggers a novel legal duty to leave a motor vehicle at once, or to refrain from entering one.

■ We are compelled to conclude that this case, like *Lambert*, presents the "rare

---

82. *Post*, at 293 (quoting *California v. Carney*, 471 U.S. 386, 392, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)).

83. *Id.*

84. *Id.*, at 294.

85. *Staples*, 511 U.S. at 611, 114 S.Ct. 1793.

86. *Id.* ("Even dangerous items [such as guns] can, in some cases, be so commonplace and generally available that we would not consider them to alert individuals to the likelihood of strict regulation.").

instance"[87] in which due process forbids the imposition of a criminal sanction unless the government is required to prove that the defendant had "actual knowledge" of the law or "the probability of such knowledge."[88] By its terms, § 22–2511 does not require proof that the defendant knew it was a crime to enter or remain in a motor vehicle knowing it contains a firearm; there is no ambiguity in the statute that could be construed as requiring such proof. Because the statute therefore purports to allow the government, in every case, to obtain a conviction by proving only what cannot by itself be a crime, § 22–2511, as written, is facially unconstitutional.

■ We do not believe we properly can undertake to "cure" this facial defect by judicially decreeing that the statute means something other than what it says.[89] As this court has stated on more than one occasion, "[i]t is not within the judicial function ... to rewrite the statute, or to supply omissions in it, in order to make it more fair."[90] Furthermore, this is not the more usual situation courts have faced in which a criminal statute that omits an intent element may be construed in light of "an interpretive presumption that *mens rea* is required."[91] There is a difference between *mens rea* (as to which the statute is not silent) and knowledge of the law. There is no background presumption that a knowledge-of-the-law element is required by a criminal statute; *au contraire*, the starting point of our analysis has been "the well-established tenet that ignorance of the law [normally] is not a defense to criminal prosecution."[92] Nor do we have warrant to infer a requirement that the government prove the defendant's knowledge of the law in order to effectuate the goal of the statute. Adding such a requirement would thwart the Council's intent to alleviate the government's burden of proof. Of course, the Council remains free, if it wishes, to amend § 22–2511 so as avoid the constitutional defects we have identified.

As a result, we hold that § 22–2511 is unconstitutional on its face and that the trial court erred in allowing appellant to be convicted of violating that statute. The first prong of plain error review is satisfied. We therefore proceed to consider the remaining requirements of plain error.

## B. The Second, Third, and Fourth Prongs of Plain Error

■ For the error to be "plain," it must be "clear under current law."[93] Our

---

87. *McNeely*, 874 A.2d at 384.

88. *Lambert*, 355 U.S. at 229, 78 S.Ct. 240.

89. Unlike the statutes construed in *Ratzlaf*, 510 U.S. 135, 114 S.Ct. 655 and *Cheek*, 498 U.S. 192, 111 S.Ct. 604, *see supra* note 53, the PMVCF statute does not proscribe only "willful" conduct. "Willful" has often been interpreted to require the defendant to act "with a bad purpose or an evil motive." *Cheek*, 498 U.S. at 200, 111 S.Ct. 604 (citation and internal quotation marks omitted). D.C.Code § 22–2511 requires only that the defendant "voluntarily" be in a motor vehicle when he "knows" that a firearm is in the vehicle. Neither term encompasses the specific intent to commit a crime.

90. *In re Te.L.*, 844 A.2d 333, 339 (D.C.2004) (quoting *1841 Columbia Rd. Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 575 A.2d 306, 308 (D.C.1990)).

91. *United States v. United States Gypsum Co.*, 438 U.S. 422, 437, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (citing *Morissette v. United States*, 342 U.S. 246, 250–51, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *Lambert*, 355 U.S. at 225, 78 S.Ct. 240); *see also Santos v. District of Columbia*, 940 A.2d 113, 116–17 (D.C.2007) (noting that where "a criminal statute is silent on the question of *mens rea*" it is ordinarily subject to a presumption requiring a culpable mental state unless it is clear the legislature intended to create a strict liability offense).

92. *McNeely*, 874 A.2d at 384.

discussion above shows that § 22–2511 runs afoul of fundamental principles of due process concerning fair notice and the government's burden of proof that were settled long before appellant's trial; indeed, long before § 22–2511 was enacted. The fact that the statute is such an anomaly, not only in the District of Columbia but in the entire United States, is a powerful indication that its unconstitutionality is clear. That there are few judicial precedents directly on point with respect to the *Lambert* issue speaks to the statute's outlier status and does not preclude a finding of plain error, for "the 'plainness' of the error can depend on well-settled legal *principles* as much as well-settled legal *precedents*." [94] As we have said, "trial judges are presumed to know and apply the legal principles enunciated in appellate decisions, and not simply to match factual scenarios, as few cases present the same facts." [95] We conclude that the error in this case is plain.

 The third and fourth requirements of plain error review also are met here. A felony conviction and a sentence of thirty-four months of incarceration for violating a facially unconstitutional statute are beyond doubt a serious infringement of appellant's substantial rights and detrimental to the fairness and integrity of the judicial proceedings.

## V.

Because D.C.Code § 22–2511 is unconstitutional on its face and the requirements of plain error review are satisfied, appellant's conviction under that statute cannot stand. As appellant was acquitted of all the other offenses with which he was charged, we remand with directions that his conviction be vacated and that the charge of violating § 22–2511 be dismissed with prejudice.

*So ordered.*

Opinion by Associate Judge THOMPSON, concurring in the judgment.

THOMPSON, Associate Judge, concurring in the judgment:

In reporting the legislation that is now codified as D.C.Code § 22–2511 (2012 Repl.), the Council of the District of Columbia Committee on Public Safety and the Judiciary explained that the legislation would "ensure that the charge [of presence in a motor vehicle containing a firearm ("PMVCF")] will not be used against those who ... legitimately believed the possession of the firearm was lawful...." D.C. Council Comm. on Pub. Safety & Judiciary, Comm. Report on Bill 18–151, "Omnibus Public Safety and Justice Amendment Act of 2009," at 4 (June 26, 2009) ("Committee Report"). Under the principles that "[t]he words of a statute are 'a primary index but not the sole index to legislative intent'" and that "the words 'cannot prevail over strong contrary indica-

---

93. *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). "Plain" is synonymous with "clear" or "obvious." *Id.*

94. *United States v. Brown*, 352 F.3d 654, 664 (2d Cir.2003) ("We can, in certain cases, notice plain error in the absence of direct precedent, or even where uniformity among the circuits, or among state courts, is lacking."); *see also In re Sealed Case*, 573 F.3d 844, 851 (D.C.Cir.2009) ("Even absent binding case law ... an error can be plain if it violates an 'absolutely clear' legal norm[.]"); *Cartwright v. McComas*, 223 W.Va. 161, 672 S.E.2d 297, 303 (2008) ("[T]he plainness of the error [may be] predicated upon legal principles that the litigants and trial court knew or should have known at the time....").

95. *Arthur v. United States*, 986 A.2d 398, 412 (D.C.2009).

tions in the legislative history,' " [1] I believe we must construe § 22–2511 to impose on the government a burden of proving that a defendant charged with PMVCF knew or had reason to know that possession of the firearm was unlawful. *Cf. United States v. McClough*, 263 A.2d 48, 55 (D.C.1970) (applying statute, D.C.Code § 33–416a (b)(1)(B) (1967), that made it unlawful for a narcotic drug user or a person who had been convicted of a narcotic offense to be present in a vehicle or structure where illicit narcotic drugs are kept, found, used, or dispensed, and holding that "by construing [the statute] to require knowledge on the part of the defendant of the presence of narcotic drugs in the place where he is, the statute can be constitutionally upheld").[2] Because the jury instructions in

this case, described *ante* at 273–74, did not inform the jury of that required element of proof, I concur in the judgment that appellant Conley is entitled to reversal of his conviction, even under the applicable plain-error standard of review.[3]

However, I am unable to join the opinion for the court, because I do not agree that § 22–2511 is unconstitutional on its face, i.e., that "every application of [it] is unconstitutional." *Ante*, 277. *A fortiori*, I do not agree that it is plainly unconstitutional.

First, I disagree with my colleagues' conclusion that § 22–2511 violates due process by shifting to the criminal defendant and away from the government the burden of proving that his presence in the motor vehicle was voluntary. Judge Glickman's

---

1. *Grayson v. AT & T Corp.*, 15 A.3d 219, 238 (D.C.2011); *see also Sandwick v. District of Columbia*, 21 A.3d 997, 1000 (D.C.2011) (agreeing that "a mental element must be read into the statute" since it was " 'inconceivable that the legislature intended that punishment would be imposed for failure to follow the course of conduct outlined, if the operator of the vehicle was ignorant of the happening of an accident' ").

2. In *Holly v. United States*, 464 F.2d 796 (D.C.Cir.1972), the U.S. Court of Appeals for the D.C. Circuit reversed *McClough* on other grounds, notwithstanding the fact that, pursuant to the District of Columbia Court Reorganization Act of 1970, decisions of the District of Columbia Court of Appeals were no longer subject to review by the D.C. Circuit. *Id.* at 798 (holding that provision of D.C.Code § 22–1515(a) (1967), that made criminal liability for presence in an establishment where illicit narcotics were administered or dispensed turn on a defendant's ability to give a "good account" of himself, was unconstitutionally vague); *see also id.* at 799 (Tamm, J., concurring) (noting that if it were not for the constitutional issue involved, he "would have preferred to have th[e] court stay its hand ... in deference to the District of Columbia Court of Appeals"); *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971) (stating the rule that "[w]ith respect to decisions of the United States Court of Appeals [for the District of Columbia Circuit] rendered prior to February 1, 1971, ...

like the decisions of this court, constitute the case law of the District of Columbia," but holding that this court is not bound to follow any D.C. Circuit decision rendered after February 1, 1971). By contrast, this court cited *McClough* with approval in *Wells v. United States*, 281 A.2d 226, 226 (D.C.1971), and *Geddie v. United States*, 284 A.2d 668, 670 (D.C.1971) (stating that the court "adhere[d] to th[e] precedent[ ]" of *McClough* that D.C.Code § 22–1515(a) (1967) was not unconstitutional).

3. I believe we are obligated to consider whether, on the facts of this case, we could conclude that even if the instructions had informed jurors of the omitted element, no reasonable juror could have found that appellant thought the firearm found in the vehicle he was driving was there legally, and thus that the omission did not affect appellant's substantial rights. *Cf. Neder v. United States*, 527 U.S. 1, 19, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (explaining that omission of element of offense from jury instructions may be harmless error if the evidence could not rationally have led to a contrary finding with respect to the omitted element). However, especially given that the jury acquitted appellant of the firearm possession offenses with which he was also charged, I do not suggest affirming on that basis.

opinion attempts to answer the hypothetical that I posed at oral argument, but does not succeed in doing so. My hypothetical: I have a bad knee and, after seeing what I'm pretty sure must be an illegal gun in the center console of the vehicle I have entered as a passenger, I decide to stay in the vehicle until it is close to a bus stop, now many blocks away, because I know that we are in an area where taxicabs pass infrequently, and I am without a cell phone or device that might enable me to summon a taxi or car service (and, perhaps, I am apprehensive about standing alone in the area). In other words, to use the language that the Committee Report employed to describe what must be proven for a PMVCF conviction, I make a "deliberate decision ... to be in the vehicle [a little while longer] with an illegal firearm present." Committee Report at 4.[4] Unfortunately for me, the vehicle is pulled over for a traffic infraction after we've gone just a block, the officer sees the gun in the console, and the driver and I are arrested, me for PMVCF. On these facts, the government would be able to prove that I voluntarily remained in the vehicle, as required by § 22–2511(a); my action *was* voluntary, because I was physically capable of getting out of the vehicle and of communicating to the driver, "please stop the car; I need to get out" (or, perhaps, "I can't ride with you, grandson, if you're going to bring that gun along"), and because no one threatened me with harm if I should try to exit.[5] But, in my (affirmative) defense, I would have the opportunity to explain that in light of my bad knee, the difficulty I would have encountered in trying to walk several blocks to the bus stop, and the other circumstances described above, the opportunity I had to get out of the vehicle right away was not a reasonable opportunity—matters I am "in the best position to prove[.]"[6]

In my view, the foregoing (quite realistic) hypothetical offers an entirely plausible construction of the word "voluntarily" as used in § 22–2511(a) and one that avoids any "logical incompatibility" of subsections (a) and (b). This hypothetical shows that there *are*, in Judge Glickman's words, "circumstances in which the government could prove beyond a reasonable doubt that the defendant 'voluntarily' remained in the vehicle, yet the defendant could prove by a preponderance of the evidence that [s]he would have left but had

---

**4.** The first definition of "voluntary" in Black's Law Dictionary (8th ed. 2004) is "done by design or intention." *Id.* at 1605.

**5.** That is, I did not lack the ability to "safely distance [myself] from the firearm." Committee Report at 4. And, unlike the individuals in Judge Glickman's example about the doctor who is in the car ministering to a sick or injured occupant and the friend who drives that person to the hospital, *ante*, 288, my continued presence in the vehicle was not because of an exigent circumstance.

As the government points out, § 22–2511 is not the only criminal statute in the D.C. Code that reaches conduct that is "legal until an individual learns something and fails to act." For example, the unlawful entry statute, D.C.Code § 22–3302 (2012), makes it unlawful to "refuse to quit the [property] on the

demand of the lawful occupant" even if the defendant entered the property lawfully.

**6.** *United States v. McArthur*, 108 F.3d 1350, 1355 (11th Cir.1997) ("[C]ourts determining whether a statutory exception is an element of the crime or an affirmative defense often consider whether the government or the defendant is in the best position to prove facts necessary to trigger the exception. Where defendants are better equipped to prove facts that would allow them to take advantage of a statutory exception, we ordinarily view that exception as an affirmative defense."); *see also Dixon v. United States*, 548 U.S. 1, 8, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006) (citing the doctrine that "where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue").

no reasonable opportunity to do so," and thus that "the respective burdens of persuasion would not be incompatible and there would not be an unconstitutional burden-shifting with respect to the element of voluntariness." *Ante*, 279.

Nor, in my opinion, does the PMVCF statute offend due process for the reasons discussed in *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). In *Lambert*, the Supreme Court considered the validity of an ordinance that made it a criminal offense for a convicted felon to remain in the city of Los Angeles for five days without registering with the chief of police. *Id.* at 226, 78 S.Ct. 240. The Court "assume[d] that [convicted felon Lambert, a seven-year resident of Los Angeles] had no actual knowledge of the requirement that she register under this ordinance." *Id.* at 227, 78 S.Ct. 240. Although acknowledging that "[t]he rule that 'ignorance of the law will not excuse' ... is deep in our law," *id.* at 228, 78 S.Ct. 240 (citation omitted), the Court held that it was incompatible with due process to convict her of a crime of omission where "circumstances which might move one to inquire as to [any applicable legal duty were] completely lacking" and where the law " 'punished conduct which would not be blameworthy in the average member of the community.'" *Id.* at 229, 78 S.Ct. 240.

As courts (including this one) have observed, the Supreme Court "has steadfastly resisted efforts to extend *Lambert's* reach, ... and has gone so far as to suggest that the *Lambert* dissent correctly characterized the majority opinion as 'an isolated deviation from the strong current of precedents[.]' " *United States v. Meade*, 175 F.3d 215, 225 (1st Cir.1999) (internal citation omitted) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 537 n. 33, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) (observing that *Lambert's* "application has been limited, lending some credence to Justice Frankfurter's colorful prediction in dissent that the case would stand as ... 'a derelict on the waters of the law' ")); *see also McNeely v. United States*, 874 A.2d 371, 384 (D.C.2005) ("*Lambert* is thus a rare instance in which the Supreme Court has held that, contrary to the well-established tenet that ignorance of the law is not a defense to criminal prosecution, ... actual knowledge of the law is a prerequisite to criminal liability.") (internal citation omitted).

There is no reason to extend *Lambert's* reach in this case, where circumstances of the type that led the Supreme Court to deviate from the well-established tenet about ignorance of the law are not present. "Engrained in our concept of due process is the requirement of notice." *Lambert*, 355 U.S. at 228, 78 S.Ct. 240. I believe it is fair to say that our populace does not lack notice that the law significantly curtails their freedoms as passengers in a motor vehicle and that motor vehicles are a regular focus of crime-reduction efforts. Motor vehicles are subject to "pervasive schemes of regulation" (which "necessarily lead to reduced expectations of privacy"). *California v. Carney*, 471 U.S. 386, 392, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). In addition, the law is clear that, upon a traffic stop even for an infraction as minor as a broken tail light, passengers in a motor vehicle may be stopped along with the driver, may be asked to step out of the vehicle, and, if contraband is observed anywhere in the vehicle, may have their purses, backpacks, and similar containers searched.[7] Further, it can come as a sur-

---

7. *See, e.g., Maryland v. Wilson*, 519 U.S. 408, 410–11, 415, 117 S.Ct. 882, 137 L.Ed.2d 41

(1997) (an officer conducting a traffic stop is empowered to direct both the driver and any

prise to no one that (as the Committee Report described) motor vehicles frequently "are used to facilitate a quick escape or enable swift implementation of [a] crime" and that there is an "escalation of harm due to the combination of the presence of a firearm and the use of a motor vehicle." Committee Report at 4.

As the majority opinion notes, in *McIntosh v. Washington*, 395 A.2d 744, 756 (D.C.1978), this court rejected a *Lambert* claim that the District's firearms laws denied due process by imposing criminal penalties on those who fail to register their firearms, "regardless of their knowledge of the duty to register." We explained that "where dangerous or deleterious devices or products are involved, the probability of regulation is so great that anyone who is aware that he is either in possession of *or dealing with them* must be presumed to be aware of the regulation." *Id.* (italics added). That principle seems equally applicable here. Given the District of Columbia's longstanding law treating guns as dangerous weapons, I believe it is fair to say that the average member of our community who voluntarily and knowingly is in a vehicle with an illegal firearm "knows that he is dealing with a dangerous device of a character that places him 'in responsible relation to a public danger,'" and thus is "alerted to the probability of strict regulation." *Staples v. United States*, 511 U.S. 600, 607, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); *see also, e.g., Speaks v. United States*, 959 A.2d 712, 715 (D.C.2008) (citing cases recognizing that a gun is a "dangerous weapon"); *cf. Wells*, 281 A.2d at 227, 227 n. 1 (applying statute that penalized

presence in "an establishment where ... any narcotic drug is sold [or] administered," and rejecting argument by Wells (who claimed that he "was at the apartment [where drugs and distribution paraphernalia were found] to pick up a minor child who was present there") that to obtain a conviction, the government must prove that he was present in the apartment "with an intent to participate in the illegal activity").

To borrow the language of one of those who testified on the bill that became the PMVCF statute, the message of the legislation is, "If there is a gun illegally in the car, you should not be." Committee Report, Attachment, Statement of Patricia Riley, Spec. Counsel to U.S. Att'y for D.C., at 18. That message cannot be a surprise to anyone. As to the visitor from another jurisdiction who is unaware that local law generally proscribes possession of a firearm in a vehicle (to use Judge Glickman's example), it would likely be difficult for the government to prove that the genuinely clueless visitor lacked a legitimate belief that the firearm was lawful. Thus, construed in accordance with the legislative history (i.e., construed to include as an element of the offense a requirement that the defendant know or be charged with knowledge that the firearm is being carried unlawfully), the PMVCF statute would not offend due process. Because we have "a duty to construe statutes in a way which avoids declaring them unconstitutional," *Berg v. United States*, 631 A.2d 394, 398 (D.C.1993), that is the construc-

---

passenger to exit the vehicle as a matter of course); *United States v. Scott*, 987 A.2d 1180, 1191 (D.C.2010) (" 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more.' "); *United States v. Ross*, 456 U.S. 798,

825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (If police have probable cause to believe that a vehicle is transporting contraband, they may search every part of the vehicle and its contents that may conceal the object of the search).

tion we should apply.[8] With it, there is no reason why we should rest on the example of the uninformed visitor to conclude that § 22–2511 is unconstitutional.[9]

Continuing with my discussion of why the circumstances here are unlike those in *Lambert,* I reject my colleagues' suggestion that the PMVCF statute punishes conduct that would not be blameworthy in the average member of the community. The District of Columbia has long had some of the most restrictive gun laws in the nation; as a result, the public policy against carrying firearms on the streets of the District of Columbia is well-known to our populace. At the same time, it is common knowledge that gun violence has ravaged our city,[10] and common knowledge that firearms are dangerous in our urban environment, certainly at least as dangerous as pit bulls. *Cf. McNeely,* 874 A.2d at 384 (holding that, given the well-known dangerous proclivities of the breed, the owner's "knowledge that his dogs were pit bulls should have moved him to inquire into his heightened obligations under the Act"). Further, an individual's voluntary

entry into or continued presence in a motor vehicle that he knows to contain a firearm being carried unlawfully can reasonably be thought to encourage unlawful conduct,[11] in that it enables the person in possession of the gun to carry or possess it in the vehicle without losing companionship (or, perhaps, without losing a paying passenger).[12] An individual's presence in a motor vehicle containing an illegal firearm also hampers law enforcement, in that, as the Committee Report explains, "when a car is stopped with multiple occupants and a firearm is present in the vehicle ... police are unable to prove who was in possession of the firearm." Committee Report at 3. Until the PMVCF statute was enacted, the conduct it describes was not illegal (and it is no longer illegal after the court's decision today). But, in light of the foregoing facts, it surely goes too far to say that an individual's voluntary entry into or continued presence in a motor vehicle that he knows to contain a firearm being carried unlawfully is "entirely innocent behavior." *Ante,* 273.[13] It most cer-

---

8. I believe we also have a duty not to thwart unnecessarily the efforts of our legislature to curb gun violence.

9. And, in any event, an appellant is not entitled to succeed on a facial challenge to § 22–2511 "by arguing that it could not be constitutionally applied to other defendants, differently situated." *Cf. Gamble v. United States,* 30 A.3d 161, 166 (D.C.2011).

10. *See District of Columbia v. Beretta, U.S.A., Corp.,* 872 A.2d 633, 652–53 (D.C.2005) (describing the various damages the District attributed to gun violence). To cite just one statistic, according to a recent report by the Children's Defense Fund, the District of Columbia has one of the highest rates of homicide from firearms in the nation, with children aged 10–19 making up a third of the victims. *See* Black Youth Project, *Report: Gun Homicide is the Leading Cause of Death among Black Teens,* (Mar. 28, 2012, 10:29 AM), http://www.blackyouthproject.com/2012/03/report-gun-homicideis-theleading-cause-of-

death-among-black-teens/ (last visited September 24, 2013).

11. For purposes of my analysis here, it is irrelevant whether this conceivable reason for the statute actually motivated the Council. *Cf. Tucker v. United States,* 708 A.2d 645, 648 (D.C.1998).

12. In one version of my hypothetical, it enables the grandson to have the opportunity to do a favor for his grandmother without having to leave his gun at home, off the streets.

13. That there may be other conduct that is equally or more culpable, but that the legislature had not made illegal, is not a basis for declaring the PMVCF statute unconstitutional. *Cf. McDonald v. Bd. of Election Comm'rs,* 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969) (a law is not unconstitutional simply because the legislature "failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked").

tainly is not. *Cf. McClough,* 263 A.2d at 52 (reasoning that knowing presence in an illegal establishment "is not presumptively innocent behavior").

For the foregoing reasons, I cannot join my colleagues in declaring that § 22–2511 is facially unconstitutional.[14]

14. Like my colleagues, I do not discuss whether the PMVCF statute infringes on the constitutional rights to associate with others and to travel freely. I note only that *McClough* rejected a similar challenge to the statute that made it illegal for a narcotics offender to be "found in any place ... in which any illicit narcotic drugs are kept," reasoning that "[t]he burden put upon prior narcotics offenders and users of absenting themselves from places where they know narcotics are kept or used is not an impermissible deprivation of their freedom of movement. It is a rational means of curbing the recognized evils flowing from narcotic traffic." 263 A.2d at 55.