*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CT-103

MELVIN L. BARNES, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia

(CTF-19199-12)

(Hon. Marisa J. Demeo, Trial Judge)

(Submitted May 20, 2014                    Decided October 8, 2014)[*]

*Jeffrey L. Light* was on the brief for appellant.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Rosalyn C. Groce*, Deputy Solicitor General, and *John J. Woykovsky*, Assistant Attorney General, were on the brief for appellee.

Before GLICKMAN and EASTERLY, *Associate Judges*, and PRYOR, *Senior Judge*.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of appellant's motion to publish.

GLICKMAN, *Associate Judge*: Appellant Melvin Barnes attacks the validity of the District of Columbia's Comprehensive Impaired Driving and Alcohol Testing Program Congressional Review Emergency Amendment Act of 2012—the temporary law that provided the basis for his arrest on November 7, 2012, for driving under the influence ("DUI") and his subsequent conviction of that offense in a bench trial.[1] In the alternative, appellant argues that his conviction must be reversed even if the emergency act was valid, because it had not yet been published in the D.C. Register at the time of his arrest and he therefore was not on notice of it. Because appellant raised neither of these claims in the trial court, he must show plain error to obtain relief.[2] "This means appellant must do more than simply demonstrate (1) that an error was committed in his trial court proceedings; he also must show (2) that the error is plain under current law and (3) that it affected his substantial rights. We then may exercise our discretion to notice the forfeited error

---

[1] The information that charged appellant with DUI mis-cited the applicable statute, but as he acknowledges, this technical defect was harmless and does not constitute a ground for relief. The trial court applied the correct law. *See Woodall v. United States*, 684 A.2d 1258, 1264 (D.C. 1996).

[2] *See Conley v. United States*, 79 A.3d 270, 276 (D.C. 2013) (appellant's failure to raise constitutional challenge to the statute under which he was convicted rendered his claim "subject to the rigors of plain error review"); *Teoume-Lessane v. United States*, 931 A.2d 478, 486 n.6 (D.C. 2007) (rejecting appellant's claim that statutory interpretation issues must always be reviewed *de novo* because "even the paradigmatic legal question of a statute's constitutionality, raised for the first time on appeal, is subject to plain error review").

and grant appellant relief, but only if '(4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"[3] For the reasons that follow, we conclude that appellant has not met this test, and we affirm his conviction for DUI.

## I.

The Council of the District of Columbia enacted the emergency legislation that appellant challenges in conjunction with its enactment of permanent legislation addressing the same matters. The permanent legislation was the Comprehensive Impaired Driving and Alcohol Testing Program Amendment Act of 2012 (hereinafter, the "Permanent Act"). The Judiciary Committee's report on this legislation characterized it as a "necessary overhaul" of the District's DUI-related legal regime in order to address an "important public safety issue," involving, among other things, the "re-launch[ing] of the District's 'breathalyzer' program."[4]

---

[3] *Conley*, 79 A.3d at 276 (quoting *Thomas v. United States*, 914 A.2d 1, 8 (D.C. 2006)).

[4] D.C. Council, Comm. on the Judiciary, Report on Bill 19-777 at 1-2 (July 2, 2012).

The issues before us arise in part from the schedule on which the Council considered and adopted the Permanent Act and its related emergency legislation. The Council approved the Permanent Act on its first reading on July 10, 2012, just a few days before the Council commenced its summer recess.[5] The second reading and approval of the Permanent Act consequently did not occur until September 19, 2012, in the Council's first legislative session after returning from the summer recess.[6] Following its approval by the Council, the Permanent Act was transmitted to the Mayor for his signature[7] and then sent on to Congress on January 10, 2013. After the prescribed period of congressional review, the Permanent Act took effect in April 2013.[8]

---

[5] *See* Rules of Organization and Procedure for the Council of the District of Columbia, Council Period 20, Rule 101 (34) (defining recess periods to include "the 17-day period beginning on July 15th of each year" and "the month of August through September 15th"), 60 D.C. Reg. 635 (Jan. 25, 2013).

[6] *See* D.C. Code § 1-204.12 (a) (2012 Repl.) ("Each proposed act . . . shall be read twice in substantially the same form with at least 13 days intervening between each reading.").

[7] *See id.* § 1-204.12 (e) ("An act passed by the Council shall be presented by the Chairman of the Council to the Mayor, who shall, within 10 calendar days (excluding Saturdays, Sundays, and holidays) after the act is presented to him, either approve or disapprove such act.").

[8] D.C. Law No. 19-266, 60 D.C. Reg. 9508 (June 28, 2013). Ordinarily, acts signed by the Mayor are transmitted to the United States Congress, to "take effect upon the expiration of [a] 30-day calendar period . . . unless during such 30-
*(continued…)*

On the same day as the first reading of the Permanent Act, the Council also passed the Comprehensive Impaired Driving and Alcohol Testing Program Emergency Act of 2012 (the "First Emergency Act"). The First Emergency Act took effect when signed by the Mayor on July 30, 2012, and it was due to expire by operation of law ninety days later, on October 28, 2012.[9] Correctly anticipating that the First Emergency Act would expire before the end of the congressional review period for the Permanent Act—and, therefore, before the Permanent Act could go into effect—the Council, on October 2, 2012, passed the Comprehensive Impaired Driving and Alcohol Testing Program Congressional Review Emergency Amendment Act of 2012 (the "Second Emergency Act"). This Act, which was effectively an extension of the First Emergency Act, was signed into law by the Mayor on October 26, 2012, and published in the D.C. Register on November 9,

---

*(continued…)*

day period, there has been enacted into law a joint resolution disapproving such act." D.C. Code § 1-206.02 (c)(1). However, if the act includes provisions to be codified in Title 22, 23, or 24 of the District of Columbia Code, the congressional review period is 60 days. *Id.* § 1-206.02 (c)(2).

[9] *See* D.C. Code § 1-204.12 (a) ("If the Council determines, by a vote of two-thirds of the members, that emergency circumstances make it necessary that an act be passed after a single reading, or that it take effect immediately upon enactment, such act shall be effective for a period of not to exceed 90 days").

2012.[10] This was the DUI law that was in effect on November 7, 2012, the day that appellant was arrested and charged with DUI.

## II.

Because appellant forfeited his claims by not raising them and attempting to develop an appropriate record in the trial court proceedings, his contentions do not call for extended discussion. Appellant argues that the Council exceeded its authority in passing the First and Second Emergency Acts because the "perceived need to modify the DUI statute[s] did not rise to the level of emergency circumstances."[11] While this court "will review emergency legislation to insure that it complies with the Home Rule Act," we owe "substantial deference to the Council's definition and determination" that emergency circumstances exist and "seek only to assure ourselves that the act is facially valid."[12] In this instance, that test is unquestionably met. The report of the Committee on the Judiciary accompanying the Permanent Act described a significant public safety issue calling

---

[10] 59 D.C. Reg. 12774-12803 (Nov. 9, 2012).

[11] Brief for Appellant at 10.

[12] *Atchison v. District of Columbia*, 585 A.2d 150, 156-57 (D.C. 1991) (emphasis omitted); *see also American Fed'n of Gov't Emps. ("AFGE") v. Barry*, 459 A.2d 1045, 1050 n.9, 1051 (D.C. 1983).

for comprehensive and prompt legislative reform of the District's impaired driving laws,[13] and the Council described the need for immediate implementation of the Permanent Act's provisions pending congressional review in its resolutions regarding the First and Second Emergency Acts.[14] The second resolution also specifically noted the need to prevent the "gap in the law" that would otherwise occur when the First Emergency Act expired before the Permanent Act could go into effect.[15] "[W]e find no basis on which to hold that the Council abused its authority in determining that an emergency existed necessitating emergency legislative action."[16]

Appellant further argues that the Council lacked the authority to pass the Second Emergency Act because, had the Council proceeded with appropriate

---

[13] D.C. Council, Comm. on the Judiciary, Report on Bill 19-777 at 1-35 (July 2, 2012).

[14] D.C. Res. 19-527, 59 D.C. Reg. 9912-14 (Aug. 17, 2012); D.C. Res. 19-586, 59 D.C. Reg. 12268-70 (Oct. 26, 2012). Among the emergency circumstances identified by these resolutions was the fact that the District's breath-test program for drunk driving had been out-of-service since February 2010.

[15] D.C. Res. 19-586, 59 D.C. Reg. 12270; *see United States v. Alston*, 580 A.2d 587, 597 (D.C. 1990) ("the continued concern about public safety necessitated continuation of those protections while Congress reviewed [the non-emergency] act.").

[16] *Id.*

dispatch, the Permanent Act could have been approved and taken effect before the First Emergency Act expired—in which event the Second Emergency Act would have been unnecessary. This argument reflects a misunderstanding of our cases. We have held that the Council may not employ emergency legislation in an "attempt[] to circumvent congressional review [or] the statutory requirement that permanent legislation may be enacted only after two readings by the Council."[17] But so long as the Council has not attempted to avoid the procedural requirements attendant on normal permanent legislation, we have interpreted the Home Rule Act to allow "a second emergency act to bridge [any] procedural gap until the congressional review period ends or until Congress disapproves the proposed regular statute."[18] As we said in *Alston*:

> *Washington Home* did not interpret the Council's emergency powers to be limited to the enactment of only one emergency act on a single subject, but rather rejected the view that successive emergency acts for the same emergency was a permissible alternative legislative track. . . . [W]e conclude that when the Council has not bypassed the second reading and congressional review

---

[17] *Alston*, 580 A.2d at 589 (D.C. 1990) (citing *District of Columbia v. Washington Home Ownership Council, Inc.*, 415 A.2d 1349 (D.C. 1980) (Council may not avoid congressional review and second reading requirements by engaging in so-called "chain hanky-panky" using emergency legislation)).

[18] *Alston*, 580 A.2d at 589-90 ("a contrary result would make it impossible as a practical matter for genuine emergencies to be effectively resolved").

requirements, the ninety-day limitation on the Council's authority to enact an emergency act is properly viewed, as part of the legislative scheme, as applying only to the act and not to its substance.[19]

In this case, as in *Alston*, the "Council passed the First Emergency Act simultaneously with the reading of the [Permanent] Act, which was thereafter passed at a second reading and subsequently sent to Congress for review."[20] Accordingly, "the purpose of the second reading requirement – notice of the Council's intended legislative action – was fully served, as was the requirement for congressional review."[21] Appellant has presented no evidence to the contrary—nothing showing either an attempt by the Council to bypass the normal procedural requirements for the enactment of permanent legislation, or unreasonable delay in the submission of the Permanent Act to Congress. The mere fact that the Permanent Act might have been processed more expeditiously does not meet appellant's burden of proof—particularly, it might be added, on plain error review,

---

[19] *Id.* at 594-95; *see also id.* at 599 ("[W]e hold that where the Council has determined that emergency legislation should remain in effect for more than ninety days and taken all reasonable actions to assure that its legislation, in a form enacted after two readings, is presented to Congress for review without unreasonable delay, the Council acts within its legislative authority under the Home Rule Act when it enacts a successive substantially similar emergency act in order to maintain the status quo during the congressional review period.").

[20] *Id.* at 595.

[21] *Id.*

where appellant has forfeited the opportunity to make a record demonstrating unreasonable delay.[22]

Appellant's final argument is that he was not afforded proper notice of the Second Emergency Act because that enactment was not published in the D.C. Register until two days after his arrest. He grounds his claim on the Ex Post Facto and Due Process Clauses of the Constitution.[23] But it cannot be said that the error appellant asserts is plain under current law, for D.C. Code § 2-602 specifies that emergency acts "shall be effective without prior publication," and—declaring that "there [is] no constitutional . . . provision expressly requiring that acts . . . be published before they bec[o]me effective"—the D.C. Circuit has held that a bill

---

[22] In any event, appellant's argument that the Permanent Act could have gone into effect before the First Emergency Act expired is based on two unfounded assumptions: (1) that the congressional review period was only thirty days, and (2) that the Council was required to interrupt its summer recess in order to convene for a second reading of the Permanent Act prior to its return from that recess. But the applicable congressional period in this case was sixty days because the Permanent Act amended the Department of Corrections Employee Mandatory Drug and Alcohol Testing Act of 1996, which is codified in Title 24 of the D.C. Code. *See* D.C. Code § 1-206.02 (c)(2). And we see no legal basis to require the Council to interrupt its summer recess and hold a special session for a second reading of proposed permanent legislation instead of proceeding normally with the second reading in the first legislative session upon return from recess. *Cf. Alston*, 580 A.2d at 594 (stating that the *en banc* court in *Washington Home* "was not suggesting . . . that a second emergency act was precluded if designed to respond to the normal legislative process").

[23] Brief for Appellant at 13.

enacted by Congress takes effect when it is signed by the President, not when it is thereafter published.[24] In fact, moreover, published notice of the Second Emergency Act *was* provided to citizens of the District of Columbia before appellant was arrested: At the same public meeting on October 2, 2012, at which the Council passed the Second Emergency Act, it also passed Resolution 19-586. The Resolution announced the Council's passage of the emergency bill and explained that it was necessary "to prevent a gap in the law" because the First Emergency Act was "set to expire on October 28, 2012, at which point [the Permanent Act] will still be undergoing a 60-day congressional review."[25] Although publication in the D.C. Register of the Second Emergency Act itself was delayed until November 9, 2012, pending the Mayor's approval of the law, Resolution 19-586 was published in the D.C. Register on October 26, 2012.

---

[24] *United States v. Casson*, 434 F.2d 415, 419-20 (D.C. Cir. 1970) (finding no Ex Post Facto Clause violation where defendant was convicted of burglary under a federal statute signed into law by the President only six hours before the burglary was committed). *Casson* is binding precedent. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("With respect to decisions of the United States Court of Appeals rendered prior to February 1, 1971, we recognize that they, like the decisions of this court, constitute the case law of the District of Columbia.").

[25] D.C. Res. 19-586, 59 D.C. Reg. 12268, 12270 (Oct. 26, 2012).

For the foregoing reasons, we reject appellant's claims that he is entitled to relief from his DUI conviction because the Second Emergency Act was invalid or otherwise not applicable to him.  His conviction is hereby affirmed.

*So ordered.*