*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CM-1331

ROBERT E. WASHINGTON, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-11484-13)

(Hon. John F. McCabe, Jr., Trial Judge)

(Submitted January 15, 2015                    Decided March 19, 2015)

*William T. Morrison* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, *David Misler*, and *Ann K. H. Simon*, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and PRYOR, *Senior Judge*.

FISHER, *Associate Judge*:  On November 22, 2013, appellant Robert Washington was convicted of one count of unlawful possession of marijuana and one count of unlawful possession of drug paraphernalia following a bench trial. On appeal, he argues that the Marijuana Possession Decriminalization Amendment

Act of 2014, D.C. Law 20-126 (effective July 17, 2014) ("Marijuana Decriminalization Amendment"), should be retroactively applied to vacate his convictions. Because the act does not expressly state or necessarily imply that its provisions should be applied retroactively, we affirm.

## I.    Background

### A.    Appellant's Convictions

Appellant was charged by information on July 5, 2013, with one count of unlawful possession of marijuana and one count of unlawful possession of drug paraphernalia.[1] On November 22, 2013, he was tried, convicted on both counts, and sentenced to two concurrent terms of time served. He filed a notice of appeal that same day.

Evidence at trial showed that on July 4, 2013, officers of the Metropolitan Police Department found two bags of a green weed-like substance, an empty pill

---

[1] D.C. Code §§ 48-904.01 (d)(1), -1103 (a) (2012 Repl.).

bottle, and 174 empty yellow and green baggies in appellant's van.  Later drug analysis concluded that the green substance was 1.8 grams of marijuana.

### B.      The Marijuana Decriminalization Amendment

The Marijuana Decriminalization Amendment was first introduced before the Council of the District of Columbia on July 10, 2013, and was referred to the Committee on the Judiciary and Public Safety.  60 D.C. Reg. 10612 (2013).  After a hearing, the committee recommended that the Council approve the bill.  D.C. Council, Report on Bill 20-409 (Jan. 15, 2014).  The bill was amended eight times before it was enacted by the Council and signed by the Mayor on March 31, 2014.  61 D.C. Reg. 3482 (2014).

The act, in relevant part, amended existing criminal statutes to decriminalize "the possession or transfer without remuneration of marijuana weighing one ounce or less," making it a civil violation.  Marijuana Decriminalization Amendment § 101 (a), 61 D.C. Reg. 3482 (2014).   An individual who commits that civil violation can be fined $25.  *Id.* §§ 103 (a), (b)(1), 61 D.C. Reg. 3482-83 (2014).  The act also decriminalized the possession of paraphernalia associated with such possession.  *Id.* §§ 101 (c), 409 (a), 61 D.C. Reg. 3482, 3487 (2014).

The effective-date provision of the legislation stated that "[t]his act shall take effect following approval by the Mayor . . . , a 60-day period of Congressional review as provided in section 602(c)(2) of the District of Columbia Home Rule Act, . . . and publication in the District of Columbia Register." *Id.* § 503, 61 D.C. Reg. 3488 (2014). The act was published in the D.C. Register on April 4, 2014, 61 D.C. Reg. 3482 (2014), and transmitted to Congress four days later. It became law when the sixty-day review period expired without Congressional action on July 17, 2014. 61 D.C. Reg. 8250 (2014).

## II.    Analysis

If the police had found appellant's marijuana one year and thirteen days later, he would have been subject to a $25 fine. *See* D.C. Code §§ 48-1201, -1203 (a) (effective July 17, 2014). He was instead convicted of two misdemeanors, and he now contends that the Marijuana Decriminalization Amendment should apply retroactively to vacate those convictions.[2]

---

[2] The plain-error standard normally applies where, as here, a party has raised an argument for the first time on appeal. *Barnes v. District of Columbia*, 102 A.3d 1152, 1153 (D.C. 2014). However, appellant could not have raised his

(continued…)

## A.     The General Savings Statutes

At common law, repeals of criminal statutes applied retroactively, "abating every prosecution which had not yet resulted in final conviction (including appeal to the highest reviewing court) . . . ." *Holiday v. United States*, 683 A.2d 61, 66 (D.C. 1996). To prevent the automatic abatement of pending prosecutions, legislatures enacted general savings statutes that "shifted the legislative presumption from one of abatement unless otherwise specified to one of non-abatement in the absence of contrary legislative direction." *Id.* at 66-67 (internal quotation marks omitted).

In 1871 Congress enacted a general savings statute, which applies not only to Congressional enactments but also to legislation passed by the Council. *See id.* at 70. The statute states:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall

---

(…continued)
claim at trial because the Marijuana Decriminalization Amendment had not yet been enacted.

> so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109 (2012). The Council also enacted a general savings statute in 1990. *Holiday*, 683 A.2d at 75 (citing D.C. Code § 45-404 (a) (2012 Repl.) *formerly* D.C. Code § 49-304 (a) (1996 Supp.)).[3]

Preliminarily, it is clear (and appellant does not argue otherwise) that the Marijuana Decriminalization Amendment qualifies as a "repeal," within the meaning of the savings statute, because it amends the provisions of existing criminal law, *see Holiday*, 683 A.2d at 79 n.44 (savings statute applies to "every statute that amends or repeals another statute imposing a penalty, forfeiture, or liability"), and that appellant's liability was "incurred" while the older statutes were in effect, *see id.* at 72 (penalties are incurred "when the criminal act was committed"). Appellant's convictions are therefore preserved "unless either by express declaration or necessary implication, arising from the terms of the law, as a whole, it results that the legislative mind will be set at naught by giving effect to

---

[3] We have previously assumed that there is no difference between the District's savings statute and the federal statute because their language is "essentially the same." *Holiday*, 683 A.2d at 75. Neither party contends that there is a significant difference between the two statutes as applied to this case. *See id.*

the provisions of" the general savings statutes. *Id.* at 79 n.44 (quoting *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465 (1908)) (internal emphasis omitted).

The government urges us to affirm appellant's convictions under the reasoning of our decision in *Holiday*. Appellant, however, contends that *Holiday* has been superseded by the Supreme Court's decision in *Dorsey v. United States*, 132 S. Ct. 2321 (2012).

In *Holiday*, we considered whether the repeal of certain mandatory-minimum sentences applied to four defendants who had committed offenses before the effective date of the act but were sentenced after that date. 683 A.2d at 74-75. After a review of the statute and its legislative history, we concluded that there was nothing "express" or "necessarily implied" that would preclude the general savings statute from preserving the defendants' mandatory-minimum sentences. *Id.* at 80.

The Supreme Court in *Dorsey* considered whether the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (codified as amended in scattered sections of 21 U.S.C.), which reduced the penalties for offenders convicted of crack-cocaine offenses, applied to the sentences of individuals who committed their offenses before but were sentenced after the effective date of the provision.

132 S. Ct. at 2326. Relying on "[s]ix considerations, taken together," *id.* at 2331, *Dorsey* held that the "plain import" or "fair implication" of the FSA was that the reduced penalties did apply to those offenders, *id.* at 2335.

We do not see any material inconsistency in the approaches taken by *Holiday* and *Dorsey*. Both decisions evaluated the intent of the legislature by examining the language of the act in question and its legislative history. *Compare id.* at 2332-35, *with Holiday*, 683 A.2d at 75-78. Both cases also used the same standard in divining that legislative intent, one of express statement or necessary implication. *See Dorsey*, 132 S. Ct. at 2332 (noting that "the Court has described the necessary indicia of congressional intent by the terms '*necessary implication*,' 'clear implication,' and 'fair implication,' phrases it has used interchangeably") (emphasis added); *Holiday*, 683 A.2d at 80 (concluding that the act "adds nothing 'express' . . . or *necessarily implied* . . . that would preclude" application of the general savings statutes) (emphasis added). *Dorsey* did not explicitly or implicitly overrule our decision in *Holiday*.

In holding that the FSA applied retroactively (not to abate any criminal prosecutions, but to reduce certain penalties applicable to defendants who had not yet been sentenced), the *Dorsey* court relied heavily on two factors not present in

*Holiday*. First, it recognized that the FSA was passed against the background of the Sentencing Reform Act of 1984, which requires a judge to look at sentencing guidelines that are "in effect on the date the defendant is sentenced." 18 U.S.C. § 3553 (a)(4)(A)(ii). The Court concluded that the Sentencing Reform Act established a "background sentencing principle" (supporting the application of new sentencing laws to offenders who had not yet been sentenced) that was at odds with the more general presumption against the retroactive application of criminal repeals embodied in the federal general savings statute. *Dorsey*, 132 S. Ct. at 2332. Second, the Court held that the FSA showed Congress's intent to follow the Sentencing Reform Act's principle instead of the presumption created by the savings statute because the FSA required the United States Sentencing Commission to promulgate, "as soon as practicable," new guidelines that conformed to the FSA. *Dorsey*, 132 S. Ct. at 2332 (internal quotation marks omitted).

We face a different situation in this case. The defendants in *Dorsey* were asking for the application of a new sentencing statute that went into effect before they were sentenced. *Id.* at 2329-30. Appellant asks for more—he requests that his convictions be vacated and the prosecution abated based on a law that was not in effect when he was convicted and sentenced. The competing principles

surrounding sentencing that were essential to the holding in *Dorsey* are not present here.[4]

In these circumstances, the general savings statutes establish the dominant background principle of interpretation. We therefore look at the legislation itself and its legislative history when determining if its retroactive application was expressly dictated or necessarily implied by the Council. *See Holiday*, 683 A.2d at 74.

**B.     Is the Marijuana Decriminalization Amendment Retroactive?**

We conclude that our reasoning in *Holiday* controls the outcome of this case. We noted there that the Council did not expressly address whether the repeal of the mandatory-minimum sentences applied to pending prosecutions. *Id.* at 76. The

---

[4] *Dorsey* did recognize that "in federal sentencing [after passage of the Sentencing Reform Act] the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." 132 S. Ct. at 2335. Here, of course, appellant was sentenced before the Marijuana Decriminalization Amendment became effective, so the holding in *Dorsey* does not assist him.

legislative history of the act was inconclusive,[5] and we concluded that "the repealing legislation adds nothing 'express' (or necessarily implied) that would preclude the general savings statutes from preserving the mandatory-minimum sentences in these cases." *Id.* at 80 (internal citation omitted).

The language of the Marijuana Decriminalization Amendment, like that of the act addressed in *Holiday*, does not expressly provide for retroactive application. Neither does the legislative history explicitly mention pending prosecutions. However, the government does point out that the Judiciary Committee considered previous convictions for possession of marijuana when discussing "the sealing of criminal records involving offenses that would no longer constitute crimes after passage of" the act. Report on Bill 20-409 at 11. The committee recommended that the issue be dealt with in a separate bill, which was later enacted by the Council as the Record Sealing for Decriminalized and Legalized Offenses Amendment Act of 2014, D.C. Law 20-0186, 61 D.C. Reg. 12108 (2014) ("Record

---

[5] At one point, the bill had been amended and a committee report stated, "Reducing mandatory-minimums for non-violent *offenders charged after the effective date of the act* will also make more space available in the District's corrective facilities for violent offenders." *Holiday*, 683 A.2d at 76 (internal quotation marks omitted). The amendment was ultimately rejected, however, and no other legislative history shed light on the issue. *Id.* at 76-78.

Sealing Amendment"). *See id.*[6] That act was designed to "address[] the collateral consequences of marijuana possession arrests and convictions for individuals who were arrested, charged, or convicted before July 17, 2014." D.C. Council, Report on Bill 20-467 at 3 (Sep. 17, 2014). It did so by providing that "[a] person arrested for, charged with, or convicted of a criminal offense . . . that was decriminalized or legalized after the date of the arrest, charge, or conviction may file a motion to seal the record of the arrest, charge, conviction, and related Superior Court proceedings at any time." Record Sealing Amendment § 2 (b), 61 D.C. Reg. 12108. The Council's choice to give such relief to individuals who were arrested, charged, or convicted before the Marijuana Decriminalization Amendment went into effect supports the inference that it did not intend that act to apply retroactively.

Appellant, relying on legislative history, contends that the clear purpose of the act is to relieve consequences that marijuana arrests have caused for the District's residents and neighborhoods. For example, the committee report on the bill states that individuals arrested for possessing marijuana could "be legally discriminated against in employment, housing, and education" and often lost "their right to food assistance and other forms of public support." Report on Bill 20-409

---

[6] The record-sealing bill was submitted to Congress for review on January 26, 2015, and the period of Congressional review expired on March 10.

at 5. The committee stated that incarceration resulting from marijuana prosecutions "risk[s] punishing [an offender's] family and community, especially when parents are taken away from their children," and that "the District's African-American community has borne the brunt of these costs." *Id.* In light of changing attitudes about marijuana use, the Council no longer considered the offenses serious enough to justify such consequences. *See id.* at 6 ("This legislation represents the realization that in the District of Columbia, . . . the decision to use marijuana should not render someone a criminal for life.").

Appellant argues that it is fair to infer from these expressions of legislative purpose that the act should be applied retroactively because doing so would better fulfill its purpose. We do not doubt that applying the provisions of the Marijuana Decriminalization Amendment retroactively would help some individuals avoid negative consequences of their crimes. However, the general savings statutes set forth "an important background principle of interpretation," and we assume that the Council "is well aware of the background principle when it enacts new criminal statutes." *Dorsey*, 132 S. Ct. at 2332. If it had intended for the act "to apply retroactively[,] . . . express language to that effect could have been included." *Holiday*, 683 A.2d at 80.

There is no language in the Marijuana Decriminalization Amendment or its legislative history that expressly states or necessarily implies that the statute applies retroactively to prosecutions already commenced, much less to a case like this one, where a conviction has already occurred. We therefore hold that the general savings statutes preserve all prosecutions for possession of one ounce or less of marijuana, and possession of related drug paraphernalia, when the offense was committed before July 17, 2014.

## III.   Conclusion

Appellant committed his offenses before the Marijuana Decriminalization Amendment took effect. As explained above, the act does not abate prosecutions based on conduct that occurred before its effective date. Appellant's convictions are therefore

*Affirmed.*