# District of Columbia
# Court of Appeals

**No. 14-CF-1343**

TRAVIS MCRAE,

FILED

NOV - 3 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

Appellant,

v.

**CF2-7361-14**

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE:   GLICKMAN and THOMPSON, *Associate Judges;* and FERREN, *Senior Judge*.

## J U D G M E N T

This case was submitted to the court on the transcript of record, the briefs filed, and without presentation of oral argument.  On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that appellant's conviction of possession with intent to distribute ("PWID") is reversed, and the matter is remanded for entry of a judgment of conviction on the lesser included offense of simple possession of marijuana.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: November 3, 2016.

Opinion by Associate Judge Stephen H. Glickman.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CF-1343

TRAVIS MCRAE, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 11/3/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF2-7361-14)

(Hon. Anita Josey-Herring, Trial Judge)

(Submitted March 15, 2016

Decided November 3, 2016)

*Robin M. Earnest* was on the brief for appellant.

*Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman*, *Robert Eckert*, and *Jay Apperson*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and THOMPSON, *Associate Judges*, and FERREN, *Senior Judge*.

GLICKMAN, *Associate Judge*: Travis McRae appeals his conviction for possession of marijuana with intent to distribute ("PWID").[1] His principal claim

---

[1] D.C. Code § 48-904.01 (a)(1) (2012 Repl.).

on appeal, and the only one we find it necessary to address, is that the evidence at trial was insufficient to prove he intended to distribute the 22.7 grams of marijuana recovered by police from the pocket of his jacket. We agree that the evidence of intent to distribute was insufficient.[2]

## I.

On the night of November 15, 2013, according to the government's evidence at trial, appellant was standing outside an apartment building at 208 36th Street N.E. with several other men when a police car drove up and stopped in front of them. The officers, members of a gun recovery unit, were responding to a report of a shooting in the block. Metropolitan Police Officer Pinto called out, "Hey, guys, police," and got out of the car along with two other officers. Appellant

---

[2] The Marijuana Possession Decriminalization Amendment Act of 2014, D.C. Law 20-126, which took effect July 17, 2014, decriminalized the possession or transfer without remuneration of marijuana weighing one ounce or less. *See* D.C. Code § 48-1201 (a) (2014 Repl.). Subsequently, the Legalization of Possession of Minimal Amounts of Marijuana for Personal Use Initiative of 2014, D.C. Law 20-1064, made it lawful under D.C. Law to possess up to two ounces of marijuana for personal use. *See* D.C. Code § 48-904.01 (a)(1)(A) (2016 Suppl.). This court has held that the Decriminalization Amendment Act does not apply retroactively to decriminalize the possession of marijuana prior to its effective date, *see Washington v. United States*, 111 A.3d 640, 644-45 (D.C. 2015), and appellant does not argue that either of these laws operates to invalidate his conviction.

turned and ran into the apartment building. Officer Pinto pursued him as he ran upstairs and inside Apartment 4, into a bedroom, out a back door, and downstairs to the back yard. The officer gave up the chase when appellant ran off into an adjoining alley. On the ground beside the alley, however, Officer Pinto found appellant's discarded jacket. It contained appellant's identification card, which gave his address as 208 36th Street NE, Apartment 4; mail addressed to him there; the keys to that apartment; and a plastic bag containing 22.7 grams (four-fifths of an ounce) of marijuana.

The police secured Apartment 4 while Officer Pinto obtained a warrant to search it. In the bedroom through which appellant had fled, the police found his photograph and personal papers bearing his name; a digital scale; 175 empty ziplock bags in varying sizes and colors; and a loaded handgun.

Detective George Thomas testified for the prosecution at trial as an expert in the distribution and use of illegal drugs, including marijuana, in the District of Columbia. He opined that dealers often use digital scales and ziplock bags like those found in Apartment 4 for selling drugs on the streets, though most of the bags were so small they "would actually not be utilized for purposes of selling marijuana because they're not designed for that. They're designed for other

drugs." Only the 31 reddish bags found in Apartment 4 would be used for marijuana, the detective testified, and even they were on the small side for that purpose.[3] However, he said, it is "rather common" for consumers to buy drugs in bags like the one that held the marijuana in appellant's jacket.

Detective Thomas further testified that "lot[s] of times marijuana is sold by [the] ounce or multiple ounce at a time." As an example, he said, "There are individuals that have purchased it by the pound and have broken it down into smaller increments and sold it by the half ounce and one-half ounce [*sic*]," while "some individuals have chosen to sell it" in smaller packages such as twenty, ten, or even five dollar bags. A $10 or "dime" bag would typically contain approximately one gram, while a $5 or "nickel" bag would contain about half a gram. Detective Thomas estimated that if the quantity of marijuana found in appellant's jacket were sold on the street by the gram, it would yield approximately $220 to $230. On "the streets," Detective Thomas added, users normally purchase drugs in small quantities because "[i]f you ask for too many drugs on the streets,

---

[3] The bags typically used to sell marijuana "would actually be a little bit larger," Detective Thomas testified. "Yes," he added, "you can pack a gram [of marijuana] in and you would have a nice fat bag here utilizing the red colored ones. A lot of times those ziplock bags that contain that 1 gram would actually be slightly larger than this."

[the sellers will] turn you away." However, he said, "[m]arijuana has a uniqueness to it because, yes, you can do both, but at the same time if you get over an ounce, they're not going to deal with you."

Finally, Detective Thomas testified that "[o]ne of the most common ways" of consuming marijuana is by smoking it with a pipe or rolled up in cigarette paper, cigar leaf, or a "manufactured roll." The detective believed it would take "quite a while" – more than just a long weekend – for even a heavy user to consume "a whole ounce" of marijuana.

The jury found appellant guilty of possession of marijuana with intent to distribute. In addition, it found him guilty of possession of drug paraphernalia (the ziplocks and scale found in the bedroom of Apartment 4),[4] a conviction that appellant does not challenge in this appeal. The jury acquitted appellant of possession of a firearm during a crime of violence or dangerous offense[5] and all other charges relating to the handgun and ammunition found in the bedroom.

---

[4] D.C. Code § 48-1103 (a) (2012 Repl.).

[5] D.C. Code § 22-4504 (b) (2012 Repl.).

## II.

To convict appellant of PWID, the government needed to prove that he possessed the marijuana discovered in his jacket with the specific intent to distribute it.[6]  In evaluating appellant's challenge to the sufficiency of the government's proof of that intent, we view the evidence in the light most favorable to sustaining the jury's verdict.[7]  To prevail, appellant must persuade us that there was "no evidence upon which a reasonable mind could find guilt beyond a reasonable doubt."[8]  But while appellate review of sufficiency of the evidence is deferential to the fact finding prerogatives of the jury, it is not "toothless."[9]  The reasonable doubt standard requires proof sufficient for a rational jury to reach a "state of near certitude" as to the defendant's guilt, proof "more powerful" than what the jury would need just to find something "more likely than not" or even "highly probable."[10]  This elevated proof requirement "means more than that there must be some relevant evidence in the record in support of each essential element

---

[6] *Taylor v. United States*, 662 A.2d 1368, 1371 (D.C. 1995).

[7] *See Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc).

[8] *Watson v. United States*, 979 A.2d 1254, 1256 (D.C. 2009).

[9] *Rivas*, 783 A.2d at 134.

[10] *Id.* at 133.

of the charged offense."[11]  "Slight evidence is not sufficient evidence; a 'mere modicum' cannot 'rationally support a conviction beyond a reasonable doubt.'"[12] Moreover, we must distinguish reasonable inference from mere speculation.  We must declare the evidence insufficient "if, in order to convict, the jury [was] required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation."[13]  In short, this court is obligated "to take seriously the requirement that the evidence in a criminal prosecution must be strong enough that a jury behaving rationally really could find it persuasive beyond a reasonable doubt."[14]

In the present case, there was no direct evidence that appellant had been selling the marijuana found in his jacket or that he intended to sell it rather than consume it himself.  Instead, to prove his intent to distribute the marijuana, the government relied on the inferences that might be drawn, in light of Detective Thomas's expert testimony and the surrounding circumstances, from the quantity and packaging of the marijuana and the physical evidence of drug trafficking

---

[11] *Id.* at 134.

[12] *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 320 (1979)).

[13]  *Id.* (quoting *Curry v. United States*, 520 A.2d 255, 263 (D.C. 1987)).

[14]  *Id.*

activity found in Apartment 4. For the following reasons, we conclude that this evidence was not sufficient to permit a rational fact finder to find beyond a reasonable doubt that appellant intended to distribute the marijuana he had in his jacket.

Our first reason centers on the quantity and packaging of that marijuana. An intent to distribute can be inferred from the possession of a quantity of drugs that "exceeds supply for personal use"[15] or that is packaged in a manner indicative of future distribution.[16] But that sort of evidence was strikingly absent here. There

---

[15] *Johnson v. United States*, 40 A.3d 1, 15 (D.C. 2012) (upholding PWID conviction for possession of a parcel containing 4,797 grams of marijuana worth between $10,000 and $47,000); *see also, e.g.*, *Taylor*, 662 A.2d at 1371 ("An intent to distribute can be inferred from expert testimony and the possession of a quantity of drugs that exceeds a reasonable supply."); *Spriggs v. United States*, 618 A.2d 701, 704 (D.C. 1992) (holding evidence of PWID sufficient based on expert testimony that the "quantity, packaging, and value of the drugs possessed by appellant . . . [were] more consistent with an intent to distribute than with personal use"); *Hinnant v. United States*, 520 A.2d 292, 294 (D.C. 1987) ("The expert testified that the heroin seized would yield sixty to seventy packets, an amount which a reasonable trier of fact could readily find was inconsistent with appellant's own personal use."); *Shorter v. United States*, 506 A.2d 1133, 1135 (D.C. 1986) ("A quantity of a drug that exceeds a reasonable supply for personal use is significant evidence of an intent to distribute.").

[16] *See, e.g.*, *Johnson*, 40 A.3d at 15 ("According to the government's narcotics expert, the parcel and the way the drugs were packaged were typical of 'how marijuana is sent through the Washington metropolitan area in bulk form' for further distribution."); *Taylor*, 662 A.2d at 1371 ("Packaging of narcotics in a manner making them ready to sell to individual purchasers is strong evidence of an
*(continued…)*

was no expert testimony or other evidence showing that the quantity or packaging of appellant's marijuana was more consistent with an intent to distribute than with personal use. Detective Thomas did not testify, and we do not think it can be maintained, that four-fifths of an ounce of marijuana exceeds a reasonable supply for a single user (even if no one would be likely to smoke all of it in one lazy, hazy weekend). That the marijuana had a potential retail value of around $220 or $230 if it were sold by the gram does not mean it was too much for one user to acquire for his own consumption.

On the contrary, Detective Thomas testified that users can and do buy as much as an ounce of marijuana on the street, and that they commonly do so in bags like the one appellant was carrying. This was as much as to say that appellant, who had only one such bag in his jacket, fit the profile of a consumer of marijuana at least as closely as he fit that of a seller. Case law in this and other jurisdictions confirms that possession of an ounce of marijuana is consistent with personal

---

*(continued…)*

intent to distribute."); *Earle v. United States*, 612 A.2d 1258, 1270 (D.C. 1992) (holding evidence sufficient for jury to infer intent to distribute where, among other things, "[m]uch of the cocaine was packaged in ziplock bags, in amounts regularly sold and purchased on the street"); *Chambers v. United States*, 564 A.2d 26, 31 (D.C. 1989) ("The fact that the cocaine was in separate packages, rather than in one large mass, is evidence of an intent to distribute.").

consumption,[17] as does the fact that this and other jurisdictions have decriminalized the possession of an ounce or more of marijuana for personal use.[18]

Second, while an intent to distribute can be inferred when drugs are found together with drug distribution paraphernalia,[19] no such paraphernalia was found in

---

[17] *Cf. Burwell v. United States*, 901 A.2d 763 (D.C. 2006) (affirming conviction for simple possession of an ounce of marijuana); *see also, e.g.*, *In re N.J.*, 752 S.E.2d 255 (N.C. Ct. App. 2013) (less than one-half ounce of marijuana in three small bags, even with $1,200 in cash on defendant's person, insufficient for inference of intent to distribute); *Phillips v. State*, 961 So. 2d 1137, 1140 (Fla. Dist. Ct. App. 2007) (10 small plastic bags containing marijuana totaling 26.6 grams insufficient for PWID when officers testified this amount also consistent with personal use); *State v. Davis*, 904 P.2d 306, 308 (Wash. Ct. App. 1995) (nineteen grams of marijuana in six baggies not inconsistent with personal use); *Davis v. State*, 641 A.2d 941 (Md. Ct. Spec. App. 1993) (common nuisance conviction reversed since 25.8 grams of marijuana consistent with personal use); *Wells v. Commonwealth*, 347 S.E.2d 139, 140-41 (Va. Ct. App. 1986) (4.2 ounces of marijuana in "seven sandwich baggies each containing ten baggie corners," with a total street value of $700, not inconsistent with personal use over a "period of time"); *Dukes v. Commonwealth*, 313 S.E.2d 382 (Va. 1984) (one-half ounce of marijuana consistent with personal use); *Bentley v. Cox*, 508 F. Supp. 870, 878 (E.D. Va. 1981) (73 grams of marijuana not inconsistent with personal use); *Adkins v. Commonwealth*, 229 S.E.2d 869 (Va. 1976) (six ounces of marijuana not incompatible with personal use).

[18] *See* D.C. Code § 48-904.01 (a)(1)(A) (legalizing the possession of marijuana weighing two ounces or less); Alaska Stat. § 17.38.020 (2015) (neither criminal nor civil offense to possess or transfer without remuneration one ounce or less of marijuana); Colo. Const. Art. XVIII § 16 (3) (2016) (same); Rev. Code Wash. §§ 69.50.360 (3)(a), .4013 (2012) (neither criminal nor civil offense to possess up to one ounce of useable marijuana); ORS § 475.864 (1) (2016) (decriminalizing possession of up to one ounce of useable marijuana in a public place).

or near appellant's jacket. The government points out that the police found no pipe, cigarette paper, or other apparatus for personal consumption near the marijuana either, but though the absence of such evidence might corroborate affirmative evidence of drug trafficking, it cannot take the place of such evidence.[20]

Third, while flight from the police is indicative of consciousness of guilt,[21] as the government argues, appellant's flight could not be taken as implying specifically that he had the intent to distribute the marijuana in his jacket pocket, since his mere possession of that marijuana was unlawful and could have motivated his flight regardless of what he intended to do with it.

---

*(continued…)*

[19] *See, e.g.*, *Barnes v. United States*, 760 A.2d 556, 558 n.3 (D.C. 2000) ("The quantity and packaging of the drugs, together with the discovery [in the same house] of the cutting and packaging paraphernalia, was more than sufficient to show the required intent."); *Earle*, 612 A.2d at 1270 (marijuana "found in combination with" paraphernalia "associated with preparation and sale of illegal drugs").

[20] *Cf. Taylor*, 662 A.2d at 1372 (noting that evidence of the defendant's intent to distribute crack cocaine, including the quantity and packaging of the drugs and the circumstances of his arrest, was corroborated by the fact that the defendant possessed no materials for personal consumption of the drugs and tested negative for drug use).

[21] *See Comford v. United States*, 947 A.2d 1181, 1187 (D.C. 2008).

Fourth, although Detective Thomas explained how appellant *could have* used the digital scale and some of the empty ziplock bags found inside Apartment 4 to measure, package and sell small amounts of marijuana in nickel or dime bags, his equivocal testimony fell short of linking the drug paraphernalia and the possibility of such activity to the single pack of marijuana, in an amount consistent with personal consumption, that was found in appellant's jacket. The detective in fact testified that most of the ziplock bags recovered from the apartment were "designed for other drugs," i.e., not for selling marijuana, and that while the 31 reddish bags could have been utilized to sell marijuana in gram increments, sellers typically used larger bags for that purpose. Similarly, while the digital scale likewise could have been used to weigh marijuana, it also could have been used for weighing other drugs. Significantly, there was no evidence that the bags and digital scale actually had been used in connection with marijuana at any time. No trace of marijuana was found on the scale, in any of the ziplock bags, or anywhere else in the apartment; and appellant's mere personal possession of a consumable amount of marijuana did not itself constitute evidence that the paraphernalia in the apartment had been or would be employed in connection with it. The physical evidence and Detective Thomas's testimony unquestionably did implicate appellant in some kind of drug trafficking activity. But it is hardly uncommon for

persons who engage in drug dealing to possess marijuana for personal consumption.[22]

To be sure, the evidence in its totality does raise a strong suspicion that appellant intended to use the digital scale and the ziplock bags in his apartment to cut up and distribute the four-fifths of an ounce of marijuana he was carrying on the street outside the apartment on the night of November 15, 2013.  Based on this evidence, we think a reasonable jury readily could find it *more likely than not* and perhaps even *highly likely* that appellant possessed the marijuana with the intent to distribute it.  But given the limitations of the government's proof and the unrebutted evidence that appellant could have possessed the marijuana for his own consumption, we think that is as far as a reasonable jury could go; it could not fairly reach a "state of near certitude" that appellant had the intent to distribute the specific amount of marijuana in his possession.  In this case, therefore, "[i]f the

---

[22] *See, e.g.*, *Washington v. United States*, 111 A.3d 640, 641 (D.C. 2015) (defendant charged with, and found guilty of, simple possession of marijuana and possession of drug paraphernalia, after police found two bags containing 1.8 grams of marijuana along with 174 empty baggies and an empty pill bottle in the defendant's van); *see also State v. Gilbert*, 839 So. 2d 250, 256 (La. Ct. App. 2003) (three grams of marijuana, though separated into four baggies and accompanied by "paraphernalia in the form of [numerous empty] eight ball labeled zip lock bags," held insufficient for inference of PWID as no expert testimony established that it was inconsistent with personal use).

standard of proof beyond a reasonable doubt means anything, the factors on which the government relies are not compelling enough to permit a reasonable jury to find [appellant] guilty" of PWID.[23]

Accordingly, we reverse appellant's PWID conviction. Because the evidentiary deficiency we have identified affects only the element of intent to distribute, we remand for entry of a judgment of conviction on the lesser included offense of simple possession of marijuana.[24]

*So ordered.*

---

[23] *Rivas*, 783 A.2d at 135.

[24] *See Brockington v. United States*, 699 A.2d 1117, 1121 (D.C. 1997).