*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-FM-967

B. J., APPELLANT,

V.

R. W., ET AL., APPELLEES.

FILED 01/13/2022
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(DRB-2176-14)

(Hon. William W. Nooter, Trial Judge)

(Submitted March 4, 2021                    Decided December 7, 2021[*])

B.J., *pro se* appellant, filed a brief.

R.W., *pro se* appellee, filed a brief.

C.L. and M.D.-J., *pro se* appellees, did not file a brief.

*Marissa L. Gunn* and *Melissa Colangelo*, Children's Law Center, filed a brief on behalf of the Guardian ad Litem for appellee K.D.

Before GLICKMAN and EASTERLY, *Associate Judges*, and STEADMAN, *Senior Judge*.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published at the direction of the court.

GLICKMAN, *Associate Judge*: Appellant B.J. challenges the trial court's ruling that she did not have third party standing to seek custody of her minor niece, K.D. Since 2007, the Safe and Stable Homes for Children and Youth Amendment Act ("the Safe and Stable Homes Act")[1] has provided that a third party, i.e., a person other than the parent or de facto parent of a minor child,[2] "may file a complaint for custody of [the] child or a motion to intervene in any existing action involving custody of the child" *if*: (1) the parent who is or has been the primary caretaker of the child within the past three years consents, or (2) the third party has lived in the same household as the child for the last four months and primarily assumed the duties and obligations of a parent, or (3) the third party is living with the child and there are exceptional circumstances necessitating relief.[3] By her own admission, B.J. does not meet any of these statutory requirements. For that reason, we affirm the trial court's ruling.

**I.**

---

[1] D.C. Code § 16-831.01 *et. seq.* (2012 Repl.).

[2] § 16-831.01(5). De facto parents may seek custody under D.C. Code § 16-831.03(a).

[3] D.C. Code § 16-831.02.

K.D. was born in February 2011 to D.D. and H.H.  Mr. D. passed away when K.D. was approximately three years old.  In July 2014, Ms. H. — who had been arrested and was facing incarceration — requested that the Superior Court temporarily grant sole legal and physical custody of K.D. to appellee R.W.  Ms. W. is a family friend who has no blood relationship to K.D.[4]  The Superior Court granted the custody order, with H.H.'s revocable consent.  Upon her release from prison in late 2015, H.H. regained custody of K.D.

In March 2017, R.W. filed an emergency motion to modify custody, arguing that K.D. should once again be placed in her care because H.H. had been re-arrested for theft and had been actively using drugs.  The Superior Court issued an interim order granting R.W. temporary sole legal and physical custody.  Around the same time, the court appointed a guardian ad litem ("GAL") to represent K.D.'s interests.

On April 7, 2018, H.H. passed away while K.D. was still in R.W.'s care, and before the trial court had definitively ruled on her custody motion.  Shortly thereafter, three of K.D.'s relatives moved to intervene in the custody case:

---

[4]  Ms. W. is married with two children.

appellant B.J. (H.H.'s sister and K.D.'s aunt), M.D.-J. (K.D.'s maternal grandmother), and C.L. (K.D.'s paternal grandmother). (We refer to them, collectively, as the "intervenors."[5]) They sought joint legal custody of K.D., with B.J. to be awarded sole physical custody of the child.

At a pretrial hearing, the court raised the question of whether the intervenors had standing to seek custody of K.D. On their behalf, M.D.-J.'s counsel[6] acknowledged that none of the intervenors met the requirements of the Safe and Stable Homes Act for third party standing, but maintained they could participate in the forthcoming trial and be awarded custody pursuant to this court's decision in *W.H. v. D.W.*[7] In that case, as discussed more fully below, this court upheld an award of joint custody to two related individuals, where one of them met the statutory requirements for third party standing and the other did not.

---

[5] The trial court initially granted the intervention motions of B.J. and M.D.-J. It does not appear that the court formally ruled on C.L.'s motion, but she nonetheless participated in the pretrial proceedings (until the court ruled that intervenors lacked standing).

[6] Of the intervenors, only M.D.-J. was represented by counsel.

[7] 78 A.3d 327 (D.C. 2013).

The trial court did not rule on the intervenors' standing at the pretrial hearing. Subsequently, however, the GAL filed a motion requesting that the trial court determine whether the intervenors had standing. The GAL argued that intervenors could not participate in the forthcoming trial because (1) they did not meet any of the criteria in the Safe and Stable Homes Act for third party standing, and (2) *W.H. v. D.W.* was distinguishable and did not provide the intervenors with standing to seek custody of K.D. The intervenors opposed the motion, principally arguing that, under *W.H. v. D.W.*, they did not need to satisfy the statutory standing requirements for the court to grant them custody if to do so would be in K.D.'s best interests. The trial court agreed with the GAL and dismissed the intervenors from the case before trial.[8] In the custody proceeding that followed, the court eventually awarded sole legal and physical custody of K.D. to R.W.

**II.**

---

[8] The court also rejected intervenors' alternative arguments that they had a right to intervene under Super. Ct. Dom. Rel. R. 24, and that the proper exercise of the court's *parens patriae* responsibilities to K.D. obliged the court to permit their participation. B.J. does not renew these arguments on appeal, and we do not address them.

B.J. filed a timely pro se appeal of her dismissal for lack of standing. The other two intervenors have not appealed. B.J. contends *inter alia* that intervenors should have been allowed to participate in K.D.'s best interests, that the provisions of the Safe and Stable Homes Act concerning third party standing are "outdated," and that the Act "does not take into consideration all of the details of this case."[9]

The GAL responds that, contrary to B.J.'s view, the "decision on whether a [third party] has standing to pursue custody of a child . . . is not based on the child's best interest," but on whether the third party meets the standing requirements set forth in the Safe and Stable Homes Act. The GAL distinguishes *W.H. v. D.W.* on the ground that B.J. is not seeking to share custody with another party who meets the Act's standing requirements.[10] For the following reasons, we agree with the GAL.

---

[9] B.J.'s brief also argues at length that the trial court misapplied the relevant best-interest-of-the-child factors in awarding custody of K.D. to R.W. following her dismissal from the case for lack of standing. However, because B.J. was not a party to the custody proceeding following her dismissal, the merits of the court's ultimate custody determination are not before us in this appeal. Unless we determine that the court's standing ruling was erroneous, the subsequent custody determination is not subject to reversal in this appeal.

[10] R.W. also opposes B.J.'s appeal. Her pro se brief responds to B.J.'s arguments regarding K.D.'s best interests. It does not discuss the question of B.J.'s standing, however.

Whether B.J. had standing is a threshold question of law that must be resolved prior to, and independently of, the merits of the case.[11] In *W.H. v. D.W.*, we explained that the Safe and Stable Homes Act "creates a legal right of a de facto parent, or a third party who meets statutory requirements, to take over the duties and responsibilities normally assumed by a natural or biological parent."[12] To have standing to seek custody in a court of law, the de facto parent or third party "must satisfy [those] statutory requirements."[13] It is undisputed that B.J. and the other intervenors did not satisfy those requirements.

*W.H. v. D.W.* recognized no applicable exception to the Act's requirements of third party standing. That case involved an order from the trial court granting joint physical and legal custody of two minor children to their adult half-brother

---

[11] *W.H. v. D.W.*, 78 A.3d at 336-37 (citing, *inter alia*, *Grayson v. AT&T Corp.*, 15 A.3d 219, 229 (D.C. 2011) (en banc)).

[12] 78 A.3d at 339.

[13] *Id.* The legislative history of the Act indicates the Council was focused on "*limit[ing]* the class of third parties who may file a petition or intervene in any existing custody action." Council of the District of Columbia, Committee on Public Safety and the Judiciary, Report on Bill 17-41, the "Safe and Stable Homes for Children and Youth Amendment Act of 2007," at 6 (June 4, 2007) (emphasis added).

and maternal grandmother, over the objections of the children's biological father.[14]

Both the brother and the grandmother had sought custody as third parties under the Act. The children's father argued that neither had standing to seek custody, and that the joint custody award therefore was in error.[15]  We concluded that the brother had third party standing under the Act, but the grandmother did not.[16] Nevertheless, we upheld the trial court's award of joint custody to both parties. We explained that

> because of her longstanding involvement in the care of the children, the frequency of her contact with the children, and the other factual findings of the Family Court revealing that she has played an important role in the lives of the children, we cannot say that *including [the grandmother] in the award of joint legal and physical custody* of the children constituted error, given the Family Court's statutory authority to enter "[a]ny other custody arrangement the court determines is in the best interests of the child."  D.C. Code § 16-831.04(a)(5).[17]

The cited statutory provision, § 16-831.04(a), provides that a valid third party custody order entered under the Act does not necessarily have to vest sole

---

[14] 78 A.3d at 330.

[15] *Id.* at 331.

[16] *Id.* at 339.

[17] *Id.* at 340 (emphasis added).

custody in the third party. Such an order may grant joint custody between the third party and a parent,[18] or "may include . . . [a]ny other custody arrangement the court determines is in the best interests of the child."[19]

This provision is of no avail to B.J. in this case. B.J. is not similarly situated to the grandmother in *W.H. v. D.W.*, despite the fact that the grandmother (like B.J.) did not meet the Safe and Stable Homes Act's requirements for third party standing. The key distinction is that, unlike the grandmother, B.J. and her fellow intervenors were not seeking to be included in a joint custody order with a person who did have third party standing to seek custody, as permitted by § 16-831.04(a)(5). Instead, intervenors were asking the court to vest custody of K.D. only in a person or persons who did not have standing to seek it ("while denying," as the trial judge said, "the third party custody request of the only person with standing [R.W.]"). Such a decision is not authorized by § 16-831.04(a)(5) or any other provision of the Safe and Stable Homes Act, and is not what this court approved in *W.H. v. D.W.*

---

[18] *See* § 16-831.04(a)(3), (4).

[19] *Id.* § 16-831.04(a)(5).

We appreciate that B.J. is seeking to intervene and to be awarded custody of K.D. because she believes that to be in K.D.'s best interests.  But important as the best-interests determination is in deciding whether to grant a petition for custody, the question of whether the petitioner has standing to seek custody precedes it, and does not turn on an inquiry into the child's best interests.   Under the Act, inquiry into the child's best interests is reserved for when the trial court turns to the merits of a third party custody petition filed by a third party possessed of standing.[20]

B.J. argues that the Act is flawed and "outdated."  But whatever validity her criticisms of the law may have, "[a]s this court has stated on more than one occasion, '[i]t is not within the judicial function . . . to rewrite [a] statute . . . in order to make it more fair.'"[21]  Section 16-831.02 spells out clear requirements for when third parties may file for custody of a child or intervene in a child custody proceeding, and the intervenors here did not meet those requirements.

## III.

---

[20]  *See* D.C. Code § 16-831.06(a) ("The court shall award custody of the child to the third party upon determining . . . (2) Custody with the third party is in the child's best interests."); *id.* § 16-831.08 (listing factors to consider in determining whether custody with a third party is in the child's best interests).

[21]  *Conley v. United States*, 79 A.3d 270, 289 (D.C. 2013) (quoting *In re Te.L.*, 844 A.2d 333, 339 (D.C. 2004)).

For the foregoing reasons, we affirm the judgment of the Superior Court dismissing B.J. from the custody case for lack of standing.